[Crim. No. 8. First Appellate District.—August 30, 1905.]

## THE PEOPLE, Respondent, v. MARTHA E. BOWERS, Appellant.

CRIMINAL LAW—MURDER—APPEAL—SUFFICIENCY OF EVIDENCE—CONFLICT.—Upon appeal from a conviction of murder, committed by a wife in the killing of her husband, where there is simply a conflict of evidence upon the question as to whether or not the defendant is guilty, this court cannot interfere with the verdict of the jury and the determination of the trial court thereon on motion for new trial.

ID.—EVIDENCE—SYMPTOMS OF ARSENICAL POISONING—CONDITION OF CLOTHING AND BED-LINEN.—Where there is testimony that deceased was affected with such purging and vomiting as were symptoms of arsenical poisoning, evidence that the clothing and bed-linen used by the deceased during his illness shortly before his death were in a dirty and much soiled condition was properly admitted as corroborative of the testimony as to such symptoms, and also to support an inference that defendant as his wife was not as kind and considerate toward her husband as her conduct in the presence of witnesses would indicate.

ID.—EVIDENCE OF MOTIVE—INTIMACY OF DEFENDANT WITH ANOTHER MAN.—It was proper to admit evidence to show that defendant and another man had intimate relations with each other and were lovers, as tending to show a motive of the defendant for desiring the death of her husband.

ID.—CROSS-EXAMINATION OF MEDICAL EXPERT—QUESTION FRAMED FROM BOOK.—Where on the cross-examination of a medical expert a question framed by the district attorney was objected to on the ground that he was reading from a medical book, whereupon he declared that he made the question his own, and, apart from the objection, it does not appear that the jury could have known that he was reading from any book, actual or reversible error does not appear, though the course adopted by the district attorney is not to be commended.

ID.—QUALIFICATION OF MEDICAL EXPERT—PROPER HYPOTHETICAL QUESTION.—Where the record sufficiently shows the qualification of a medical expert, and a hypothetical question put to him embodied facts assumed which might fairly be inferred from the evidence, there was no assumption of the province of the jury in such question.

ID.—PROCURING OF POISON—PRESCRIPTION FORGED BY DEFENDANT—AGENCY OF SISTER.—Evidence was admissible to show by a druggist that a sister of defendant procured an ounce of arsenic on a prescription signed with the name of a physician, where, regardless of the character of the agency of the sister, it was shown that

the prescription was a forged one in defendant's handwriting and on paper torn from a book belonging to her and in her possession, and that four grains of arsenic were found in her husband's stomach five days after the arsenic was procured, she having been in sole attendance upon him thereafter to the day on which he died.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

C. W. Lynch, F. G. Drury, Lynch & Drury, H. J. McIsaac, and Coldwell & Borland, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

HALL, J.—Defendant was convicted of the crime of murder in the first degree for the killing of her husband, and was sentenced in accordance with the verdict to imprisonment for life. This is an appeal from the judgment and from the order denying her motion for a new trial.

The first point urged as ground for a reversal of the judgment and order is that the evidence was insufficient to sustain the verdict.

In cases where there is simply a conflict of evidence on the question as to whether or not the defendant is guilty, this court cannot interfere with the verdict of the jury and the determination of the trial court thereon on motion for a new trial. (*People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169]; *People* v. *Fitzgerald,* 138 Cal. 40, [70 Pac. 1014]; *People* v. *Donnolly,* 143 Cal. 394, [77 Pac. 177].)

In *People* v. *Gonzales,* 143 Cal. 605, [77 Pac. 448], the rule is laid down thus: "This court cannot interfere with the verdict of a jury, nor with the action of the court below in refusing a new trial, on the ground that the evidence is insufficient to justify the verdict, unless there was such a lack of evidence as to satisfy us that the court below abused its discretion in denying the new trial.

In the case now before the court the evidence is largely circumstantial, and is set forth in four hundred and eighty-eight pages of the transcript. No good purpose will be sub-

served by discussing in detail the evidence. Such a discussion would necessarily be an argument as to what inferences should or could be drawn from the evidence. Suffice it to say that after a careful examination of the evidence in the transcript we are of the opinion that under the rules above set forth the contention of appellant on this point cannot be sustained. The evidence was sufficient to sustain the verdict, and the court did not err so far as this point is concerned in denying the motion for a new trial.

It is next urged that the court erred in admitting, over the objection of the defendant, testimony to the effect that the clothing and bed-linen used by deceased during his illness shortly before his death were in a dirty and much soiled condition.

This testimony was clearly proper. It tended to corroborate other testimony to the effect that deceased was afflicted with purging and vomiting, symptoms, as the evidence showed, of arsenical poisoning, from which it was claimed that deceased died. One of the witnesses testified that the soiling of the bed-sheets was the result of vomiting and purging. Prior to the introduction of the evidence complained of defendant had drawn out testimony to the effect that during the illness of deceased, which lasted upwards of two months, defendant had appeared, at least in the presence of the witness, to be kind and attentive to the comfort of her husband. From the condition of the bed-linen, etc., inferences might well be drawn that defendant was not really anxious for the comfort or recovery of her husband, as her conduct in the presence of witnesses would indicate.

It is contended that the court erred in admitting, over the objections of defendant, evidence that defendant and one Lervy had, before the death of deceased, visited and drank together in certain saloons; that on one occasion she had sat on Lervy's lap, and they had kissed each other, and placed their arms around each other while so doing; and that on the night of the day on which deceased died and the following night she and Lervy slept in the same room. It cannot be denied that evidence of the existence or want of a motive for the commission of any particular crime is often of much importance in determining whether or not the defendant

committed the crime charged. Especially is this so in cases depending on circumstantial evidence such as this was. Indeed, the defendant procured the court to substantially so instruct the jury. The testimony now under discussion, taken as a whole, tended to show that Mrs. Bowers and Lervy were lovers. Some of it standing alone might be said to be too remote and inconsequential to furnish any such inference, but it should all be considered. Proof that they were lovers furnished a motive why defendant might desire the death of her husband. The evidence was properly admitted.

It is also contended that the court erred in permitting the district attorney, over the objection of defendant, "to read on cross-examination of witness Dr. Stephens extracts from medical works, and to ask the witness whether what was so read corresponded with his own judgment." The witness had given testimony as to the symptoms and effects of arsenical poisoning, and following such testimony the transcript contains the following:—

"Q. Is this a correct statement, doctor: While the poison is being eliminated, the process which begins very soon after it is taken, it generally causes fatty degeneration of the liver, heart, and kidneys, the symptoms of which are often very prominent?

"*Mr. Drury.*—We object to the question as incompetent, irrelevant and immaterial, improper and hearsay. It appears that the district attorney is reading from certain medical books and asking this witness questions therefrom.

"*Mr. Byington.*—I am making it my own question, if your honor please.

"*The Court.*—Objection overruled; to which ruling of the court defendant then and there duly excepted."

It will thus be seen that except for the statement of the attorney for defendant the transcript does not show that the jury could have known that the district attorney was in fact reading from a medical book, or from any book. He had not so stated, and so far as we can see from the transcript the book, if in fact he was reading his question from a book, was entirely out of sight of the jury.

On the objection being made, the district attorney said, "I am making it my own question," which in fact it was in form.

It was held in *Lilley* v. *Parkinson*, 91 Cal. 655, [27 Pac. 1091], that it is not competent, upon the examination of medical witnesses, to read to them extracts from medical works and ask them whether what is so read corresponds with their own judgment, when it is apparent that the sole object of so doing is to place before the jury the opinion of the author of the books referred to. In the case just cited extracts were read from a book shown to be a standard work on surgery and witnesses asked if what was read corresponded with their own judgment, and the court said, "The only effect of these questions and answers was to place before the jury the opinion of the author of the book referred to, and it is also apparent that this was the object sought." But from the record before us we cannot say that the rule laid down in *Lilley* v. *Parkinson* was violated. While the course adopted by the district attorney cannot be commended, we do not think it justifies a reversal, or that actual error has been shown.

Defendant urges that the court erred "in permitting Dr. McLaughlin, a witness for the prosecution, to testify as an expert without it being shown, first, that he was a regularly graduated and licensed physician of any medical school; and, second, that he was an expert in the general subject under discussion." The objection as it appears in the transcript was to a long hypothetical question, and was thus stated: "We object to that question on the ground that no proper foundation has been laid, and upon the ground that it is not based upon the facts presented, also upon the ground that it is incompetent, and inasmuch as it assumes the province of the jury."

The witness had testified that he was and had been a physician and surgeon for several years past, and had already given testimony without objection as an expert and along medical lines, covering in narrative form four and a half pages of the transcript. Under these circumstances we do not think that the objection was either well taken, or was in fact pointed at the matter now urged as the ground of objection.

The objection to the hypothetical question put to Dr. Harrison was properly overruled. We think that the facts as-

sumed in the question might fairly be inferred from the evidence in the case.

It is lastly urged that the court erred in allowing the prosecution to introduce certain testimony of one Mr. Peterson, a druggist, to the effect that one Mrs. Sutton presented to him, August 20, 1903, a certain prescription for arsenic, signed "McLaughlin, M. D.," and that he gave her thereon an ounce of arsenic,—that is to say, an ounce of arsenious acid.

The contention of defendant on this point is without merit. About four grains of arsenious acid were found in the stomach of deceased after his death, which occurred five days subsequent to the getting of the arsenic. Mrs. Sutton was the sister of defendant; the prescription was in the handwriting of defendant, and on paper torn from a book belonging to her and in her possession; defendant was in sole attendance on deceased from August 20th to his removal to the hospital on the day of his death. These facts sufficiently connected Mrs. Bowers with the getting of the arsenic to allow of the introduction of this evidence. Whether Mrs. Sutton was a co-conspirator of Mrs. Bowers or simply her innocent agent, the fact that the prescription on which the arsenic was obtained was forged by Mrs. Bowers sufficiently connects her with the obtaining of the arsenic to allow of the proof of the getting of the same.

After an examination of all the points urged by the defendant as ground for a reversal we have found no error in the record.

Judgment and order are affirmed.

Cooper, J., and Harrison, P. J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal was denied by the supreme court on October 11, 1905.