[Crim. No. 68.   First Appellate District.—October 29, 1908.]

THE PEOPLE, Respondent, v. CORDELIA BOTKIN, Appellant.

CRIMINAL LAW—MURDER—MAILING POISONED CANDY—LOSS OF PHOTOGRAPHIC EXHIBITS OF HANDWRITING BY FIRE—REVERSAL NOT REQUIRED.—Upon appeal from a judgment of conviction of murder committed by poisoned candy mailed to the deceased, the mere fact that photographic exhibits of handwriting of defendant made by experts and forming part of the record on appeal were destroyed by the fire of April 18, 1906, without the fault of any person, cannot require this court to presume that the defendant did not have a fair trial, or to reverse the judgment based on the verdict of the jury which heard all of the testimony and saw the exhibits of handwriting presented by the expert witnesses.

ID.—DEATH CAUSED HERE IN ANOTHER STATE—JURISDICTION—PROCEDURE—LAW OF CASE.—The decision on the former appeal that the courts of this state have jurisdiction of the crime committed therein of mailing poisoned candy to another state with intent to commit murder in another state, and thereby causing the intended death

of the person to whom it was therein addressed, and that "the defendant, having committed a murder in part in the state of California, is punishable under the laws of this state, exactly in the same way, in the same courts, and under the same procedure, as if the crime was committed entirely within the state," is the law of the case upon this appeal.

ID.—CONSTITUTIONAL LAW—TRIAL BY JURY.—The defendant was not deprived of the right of trial by jury secured to her by sections 7 and 13 of article I of the constitution of this state.

ID.—FEDERAL CONSTITUTION NOT VIOLATED.—The defendant was not deprived of any rights under article III of the federal constitution or under articles V and VI of the amendments thereto, which refer only to powers exercised under the federal government, and not under the states. Nor is section 27 of the Penal Code of this state, allowing a crime to be punished therein when part of the acts constituting it are committed within this state, in violation of section 2 of article IV or of section 1 of article XIV of the amendments to the constitution of the United States or of any other provision of that constitution.

ID.—PROOF OF MOTIVE—ILLICIT RELATIONS OF DEFENDANT WITH HUSBAND OF DECEASED—AVOWED INTENTION TO RETURN TO FAMILY.— Evidence was admissible, upon the question of motive, to show that the husband of the deceased had lived with the defendant in illicit relations; that he left San Francisco as a war correspondent for the scene of the Spanish-American war with the avowed intention of returning to live with his wife and family when the war was over; that the defendant corresponded with him after his departure, and after the death of his wife from the poisoned candy used expressions indicating she hoped that she and he might yet come together and be married.

ID.—CIRCUMSTANTIAL EVIDENCE OF CRIME—EVIDENCE OF MOTIVE IMPORTANT.—Where the evidence connecting the defendant with the killing of the wife of her friend was circumstantial only, it was most important for the prosecution to show that defendant had a motive for desiring her death, and the evidence admitted tended to prove the existence of such motive, and its admission is amply sustained by authority.

ID.—EVIDENCE—ARSENICAL POISONING.—Evidence was admissible to show that the deceased died from arsenical poisoning, and that all who partook of the poisoned candy showed symptoms of arsenical poisoning, which tended to prove that the candy contained arsenic.

ID.—DECLARATION OF DECEASED.—It was not prejudicial error to admit a declaration of the deceased of a negative character, that she had no thought who sent the candy received. Her declaration to her physician as to her symptoms were properly admitted.

ID.—PLACE OF OBTAINING CANDY MAILED—EVIDENCE AS TO IDENTITY— UNCERTAINTY.—When the evidence tended strongly to show that the

candy mailed was obtained from the store of Haas & Son, San Francisco, evidence of one of their employees was admissible to prove that defendant reminded her of a person to whom she sold candy at that store on a Sunday afternoon last preceding the date on which the candy was mailed, and that she believed her to be the same person, though not sure. Any uncertainty in such testimony goes only to its weight, and not to its admissibility.

ID.—TESTIMONY NEGATIVING POISON BY CANDY MAKERS.—Since the evidence showed that the candy mailed and received was strongly impregnated with arsenic, the testimony of the candy-makers at the factory of Haas & Son was admissible to show that no arsenic or other poison was used in making the same at that factory.

ID.—PROOF OF EXAMPLES OF HANDWRITING.—Evidence of an admission made on the first trial that examples of handwriting of the defendant used in the second trial were correct, was admissible, though not conclusive; but such evidence was confirmed by the testimony of the defendant on the second trial that they were in her handwriting.

ID.—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—*Held,* that the evidence, though circumstantial, is very convincing as to the guilt of the defendant, and quite sufficient to justify the verdict.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—CORRECTION BY COURT.—*Held,* that there was no misconduct of the district attorney justifying a reversal, it appearing that the jury was immediately and properly instructed by the court to disregard any objectionable remarks made by the district attorney.

ID.—INSTRUCTION—DUTY OF JURY TO RECEIVE LAW FROM COURT—EMPHASIS.—A remark made at the conclusion of an instruction that the jury must determine all questions · of fact, but must receive the law from the court, that "if you do so, no harm can come from my errors, if I commit any, for a supreme court sits to correct them, and the jury should not assume to exercise the functions of that tribunal," only emphasizes the duty of the jury to be governed by the instructions of the court, and is not erroneous.

ID.—LIMITING EVIDENCE TO QUESTION OF MOTIVE.—The court properly limited the effect of the evidence as to relations existing between defendant and the husband of the deceased by its instruction to the jury to consider it only on the question of motive.

ID.—MALICIOUS AND GUILTY INTENT—CONCLUSIVE PRESUMPTION.—The court properly instructed the jury that a malicious and guilty intent is conclusively presumed from the deliberate commission of an unlawful act for the purpose of injuring another.

ID.—EFFECT OF EVIDENCE—NUMBER OF WITNESSES—AMPLIFICATION OF CODE INSTRUCTION.—The court did not err after giving the instruction as to the effect of evidence and number of witnesses, embodied in subdivision 2 of section 2061 of the Code of Civil Procedure, in

further explaining and amplifying it by saying: "In other words, it is not the greater number of witnesses that should control you where their testimony is not satisfactory to your minds, against a less number whose testimony does satisfy your minds, and produces moral conviction that they are telling the truth. It is upon the quality of the testimony rather than the quantity or the number of witnesses, that you should act, providing it produces in your minds this moral conviction, and satisfies you of its truthfulness."

ID.—REASONABLE DOUBT.—Where the court gave the well-known charge from the Webster case upon reasonable doubt, the court did not err in stating that that term does not mean a "mere possible doubt, a conjectural doubt," nor "a doubt which is merely capricious."

ID.—PRESUMPTION OF INNOCENCE.—An instruction as to the presumption of innocence, in substantially the same language as that approved by the supreme court, in so far as not taken from an instruction requested by the defendant, cannot be deemed erroneous.

ID.—INSTRUCTION AS TO WEIGHT OF TESTIMONY.—The charge of the court that in considering the weight and effect to be given to the testimony of witnesses, the jurors have the right, among other things, "to consider the consequences resulting to a witness, if any, from the result of the trial," is not open to the criticism that it singles out the defendant. The language was general, and the application was left to the jury.

ID.—REQUESTED INSTRUCTION AS TO ABSENCE OF MOTIVE—INSTRUCTION AS TO PRESENCE OF MOTIVE.—Where a requested instruction was given on the supposition of the absence of motive, the court, in view of the evidence, also properly instructed the jury on the supposition of the presence of motive, and properly stated that the presence or absence of motive increases or diminishes the presumption of innocence, and can have no other function.

ID.—INSTRUCTION AS TO CIRCUMSTANTIAL EVIDENCE.—*Held,* that the instruction on the subject of circumstantial evidence was not argumentative.

ID.—GENERAL INSTRUCTIONS.—*Held,* that there is nothing to criticise in general instructions intended to guard the jury against being moved with pity for the defendant or by prejudice or passion on account of the nature of the offense with which she was charged, and to impress upon them the serious nature of the duties they were called upon to perform.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from orders denying a new trial and denying a motion in arrest of judgment. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

Geo. A. Knight, Frank McGowan, and Knight & Heggerty, for Appellant.

U. S. Webb, Attorney General, and J. Chas. 'Jones, for Respondent.

HALL, J.—Defendant was convicted of murder in the first degree, and thereupon made a motion for a new trial and also a motion in arrest of judgment. Both motions were by the court denied, and final judgment was pronounced that she suffer imprisonment for life in accordance with the verdict of the jury.

This is an appeal from the judgment and from the orders denying said motions.

Defendant was convicted for the killing of one Mary Elizabeth Dunning, otherwise known as Mrs. John P. Dunning. The manner in which the death of Mrs. Dunning was accomplished is fully set forth in the indictment, from which it appears that on or about the fourth day of August, 1898, defendant, at the city and county of San Francisco, state of California, prepared and sent through the United States mail certain poisoned candy to Mrs. Dunning, at Dover, in the county of Kent, in the state of Delaware, where it was by Mrs. Dunning received and eaten, and from the effects of which she, on the twelfth day of August, 1898, at Dover, in said county of Kent, state of Delaware, died.

Defendant was once before convicted under this indictment, but upon appeal the judgment was reversed because of an erroneous instruction. (*People* v. *Botkin,* 132 Cal. 231, [84 Am. St. Rep. 39, 64 Pac. 286].)

A. The first point urged for a reversal of the judgment is that, without the fault of defendant, a part of the record on appeal was destroyed in the conflagration of April 18, 1906. Upon the trial certain writings were introduced in evidence. Some of these were writings claimed to have been made by defendant, and tending to connect her with the killing of Mrs. Dunning, and others were exemplars of her handwriting used by expert witnesses in making comparisons with the incriminating and disputed writings. From the bill of exceptions in this case it appears that photographic copies of these exhibits were made upon the former trial, and were filed with the clerk

of the supreme court. These photographic copies of exhibits are by the present bill made a part thereof, but since the settlement of the bill were destroyed by the conflagration of April 18, 1906, and cannot now be restored. It is now urged that because the entire record cannot now be presented to this court, we should reverse the judgment and remand the case for a new trial. No authority is cited in support of this position, and we know of none that could be. It is incumbent on the appellant to show error, and we know of no rule that permits us to presume that defendant did not have a fair trial because a portion of the record upon her appeal has been destroyed without fault of either party. Furthermore, an examination of the bill of exceptions shows that so far as the writings appear to have been read to the jury, their contents are set forth in the bill of exceptions. The only apparent purpose of making the photographic copies of the writings a part of the record on appeal was to enable this court to judge of the weight and effect of the evidence to the effect that defendant was the author of the incriminating writings, and to enable this court to make comparisons between the exemplars of defendant's writing and the incriminating writings. Under the condition of the evidence in this case, tending to connect appellant with the killing of Mrs. Dunning, any views that we might have as to the credit that should be given to the evidence of the handwriting experts, and of the witnesses that testified that in their opinion the incriminating writings were written by defendant could not justify us in reversing the judgment founded on the verdict of the jury that heard and saw all the witnesses as they gave their testimony.

We see no reason for reversing the judgment because the photographic copies of the said exhibits have been destroyed under the circumstances appearing in this case.

B. The second point urged for reversal is that the California court had no jurisdiction of the crime charged, for the reason that the poisoned candy was received and eaten by Mrs. Dunning in the state of Delaware, where she died, though prepared in and sent from the city and county of San Francisco, with intent that Mrs. Dunning should eat thereof and be killed thereby in the state of Delaware. Which state had jurisdiction of the offense is stated by appellant in her brief to be the principal controversy in this case.

But this question has been on the former appeal determined adversely to the present contention of appellant. (*People* v. *Botkin*, 132 Cal. 231, [84 Am. St. Rep. 39, 64 Pac. 286].) That decision is conclusive on this court.

C. Appellant, under the head of "Objections to the jurisdiction of the court involving federal questions," contends that by the trial in the superior court of the city and county of San Francisco various provisions of the constitution of this state and of the United States were violated.

1. It is insisted that defendant was deprived of her right of trial by jury secured to her by sections 7 and 13 of article I of the constitution.

This contention is based on the proposition that no crime of murder was committed in the state of California, but in the state of Delaware, if committed at all, and that the jury must be selected from the vicinage or county where the crime is alleged to have been committed. This contention is answered by the decision upon the first appeal. It was there said: "The defendant having committed a murder in part in the State of California, is punishable under the laws of the State, exactly in the same way, in the same courts, and under the same procedure, as if the crime was committed entirely within the State." (*People* v. *Botkin*, 132 Cal. 231, [84 Am. St. Rep. 39, 64 Pac. 286] ; Pen. Code, sec. 27.)

2. Predicating her contention upon the same proposition that the only crime charged was committed in the state of Delaware, appellant claims that by the trial in this state she was deprived of rights under article V and article VI of the amendments to the constitution of the United States, and article III of the same constitution.

But it is well settled that the provisions of these articles have reference to powers exercised by the government of the United States, and not to those of the states. (*Eilenbecker* v. *Plymouth County*, 134 U. S. 35, [10 Sup. Ct. Rep. 424] ; *Brown* v. *New Jersey*, 175 U. S. 174, 20 Sup. Ct. Rep. 77].)

3. It is also urged that appellant was deprived of rights given her by section 2 of article IV and section 1 of article XIV of amendments to the constitution of the United States. This contention seems to be predicated upon the assumption that the provisions of section 27 of the Penal Code, making anyone amenable to our penal laws who, in whole or in part,

commits a crime within the state, is in violation of said sections of said articles.

Section 2 of article IV simply provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." How it can be conceived that the provisions of section 27 of the Penal Code contravene this provision is not discernible.

The provision of the fourteenth amendment claimed to be violated is, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We see nothing in section 27 of the Penal Code that violates this provision.

"The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two states separated by only an imaginary line. On one side of the line there may be a right of trial by jury, and on the other side no such right. Each state prescribes its own modes of judicial proceeding." (*Missouri* v. *Louis,* 101 U. S. 22.)

"Any legal proceeding sanctioned by age and custom, or newly devised in the discretion of the legislative power, in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law." (*Hurtado* v. *California,* 110 U. S. 516, [4 Sup. Ct. Rep. 292].)

So, also, it was said in *Leeper* v. *Texas,* 139 U. S. 462, 468, [11 Sup. Ct. Rep. 577], "that law in its regular course of administration through courts of justice is due process, and when secured by the law of the state the constitutional requirement is satisfied."

We find nothing in any of the constitutional provisions relied on by appellant that prevents a state from punishing, as an offense against the penal laws of such state, a crime when only a portion of the acts constituting the crime are committed within the state.

D. The court allowed the prosecution to show by both John P. Dunning and by other witnesses that close, intimate and

meretricious relations had existed between defendant and John P. Dunning for several years and up to the time of his departure from this state, which occurred shortly before the killing by poison of Mrs. John P. Dunning. Appellant urges this action of the court as error. The court, however, carefully and fully instructed the jury that this evidence could only be considered by them upon the question of motive, and for this purpose it was clearly admissible.

To make this clear it is only necessary to state some of the salient facts shown by the evidence. John P. Dunning and Mrs. John P. Dunning were married in 1891, and continued to be husband and wife until her death. The defendant was also a married woman, but not living with her husband during the period covered by the evidence. Several years before the killing of Mrs. Dunning she and her husband came to San Francisco, where they both resided for a while, but Mrs. Dunning and her young child returned to Dover, Delaware, several years before her death, and there remained as a member of the household of her father until her death. John P. Dunning remained in San Francisco, except for a short time, when he worked in Salt Lake City. He became acquainted with defendant before his wife left San Francisco, and after her departure his relations with defendant became closer. He took up his residence in the same house with her and cohabited with her. Shortly before the death of Mrs. Dunning, John P. Dunning was offered work as a war correspondent for a New York paper, from the scene of activity about Cuba in the Spanish-American war. He accepted the position, and upon telling defendant of his purpose to leave San Francisco, and that he expected never to return to San Francisco, but at the close of the war to go to New York, and establish a home for himself, wife and child, and to there again live with his wife, she sought to dissuade him from so doing, and urged him to remain in San Francisco. After his departure from San Francisco defendant corresponded with him, and after the death of Mrs. Dunning, and after she knew that suspicion had been directed to her as the person who had sent from San Francisco the poisoned candy to Mrs. Dunning, she used expressions to one witness at least that she even then cherished the thought or hope that she and Dunning might yet come together and be married. Defendant and Mrs. Dunning were not acquainted.

The evidence connecting the defendant with the killing of Mrs. Dunning was circumstantial only. It was therefore most important that the prosecution should show that defendant had a motive for desiring the death of Mrs. Dunning; and we think that it cannot admit of a doubt but that the evidence now under discussion tended to prove the existence of such motive, and was therefore admissible. The action of the court upon this matter is amply sustained by the authorities. (*People* v. *Brown,* 130 Cal. 591, [62 Pac. 1072] ; *People* v. *Stout,* 4 Park. Cr. Rep. 128; *People* v. *Bowers,* 1 Cal. App. 503, [82 Pac. 553] ; *People* v. *Cook,* 148 Cal. 334, [83 Pac. 43] ; *People* v. *Suesser,* 142 Cal. 354, [75 Pac. 1093] ; *People* v. *Soeder,* 150 Cal. 15, [87 Pac. 1016] ; *Pierson* v. *People,* 79 N. Y. 424, [35 Am. Rep. 524] ; *State* v. *Larkin,* 11 Nev. 329; *People* v. *Lane,* 101 Cal. 517, [36 Pac. 16] ; *People* v. *Eubanks,* 117 Cal. 664, [49 Pac. 1049] ; *People* v. *Craig,* 111 Cal. 460, [44 Pac. 186].)

E. Under the head of "Errors of law on the admission and rejection of evidence," appellant calls our attention to several rulings of the court which she claims were erroneous.

1. The box of poisoned candy was received at the postoffice at Dover, Delaware, at 5:58 o'clock P. M. August 9, 1898. It was shortly after obtained by a witness, Harry C. Pennington, a nephew of Mrs. Dunning, and by him taken to the house of her father, and handed to her in the presence of several members of the family, when she opened the box, and took therefrom a note in pencil, "With love to yourself and baby," and signed "Mrs. C." After testifying to the above facts the witness was asked, "Did she say anything?" and over the general objection made by defendant that it was "incompetent, irrelevant and immaterial," answered that "after she read the note she wondered as to who the candy could be from." Appellant now urges the court thus allowed hearsay evidence of the declarations of Mrs. Dunning. But whether the answer of the witness "that she wondered as to who the candy could be from" should be regarded as hearsay, or as proper evidence because a part of the *res gestae* attending the receipt of the candy, as contended by respondent, we do not think it of sufficient importance to justify a reversal. The question that was objected to was "Did she say anything?" and called for the answer "Yes" or "No." The question was but preliminary, and the objection was not specifically directed

to the point that the answer might be hearsay. When the answer was given going beyond the question, and perhaps containing hearsay matter not called for by the question, no motion was made to strike it out. The statement made by Mrs. Dunning was at most but negative in its character. It simply indicated that she had no thought as to who sent the candy. Whether the evidence was strictly admissible or not, it was too trivial in character to require a reversal of the judgment or a new trial.

2. Several witnesses, who partook of the candy received by Mrs. Dunning, were allowed, over the objections of defendant, to testify as to the symptoms experienced by them shortly after eating of the candy. All these symptoms were shown to be characteristic of arsenical poisoning, and the evidence thereof tended to prove that the candy contained arsenic, and was clearly admissible.

3. Appellant claims that the court permitted the physician who attended Mrs. Dunning to testify as to what she told him as to what she had eaten on the previous day. (He was called the next morning after she had eaten the candy.) An examination of the folios referred to in appellant's brief does not sustain this contention, but, on the contrary, we find that the court as well as the district attorney confined the witness to stating what Mrs. Dunning said to him as to her then existing symptoms, and admonished the witness not to state what Mrs. Dunning said as to what she had eaten, and promptly struck out the testimony that the physician seems to have interjected as to what she said to him about eating the candy. In other words, the point made by appellant has no existence in the record.

4. Objection is made to the action of the court in permitting Mrs. McGinnis, who, according to the theory of the prosecution, as an employee of Haas & Son, sold the candy that was sent to Mrs. Dunning, to testify that the defendant reminded her of a person to whom she sold candy on Sunday afternoon, July 31, 1898. Her whole testimony on the subject of the identity of defendant with the purchaser of the candy was to the effect that she believed them to be the same person, but could not be sure. The criticism of her testimony simply goes to its weight, and not to its admissibility.

5. There was no error in allowing testimony from the various candy-makers in the employ of Haas & Son that no arsenic

or other poison was used in making candy at the factory of Haas & Son. The evidence in the case tended strongly to show that the candy sent to Mrs. Dunning came from the candy store of Haas & Son, and that this particular candy was strongly charged with arsenic when received by her. The evidence in question, while probably not at all necessary, tended to show that the poison was placed in the candy after it was sold.

6. Certain writings were introduced in evidence as exemplars of defendant's handwriting. The district attorney, over the objection of defendant, proved that at the first trial of this case defendant's attorney, in her presence, admitted these writings to be in her handwriting.

Undoubtedly such admission at the first trial could not be used as a conclusive admission of the fact at the second trial. But we see no good reason why it was not proper proof of a statement made in the presence of the defendant which might be considered as evidentiary matter tending to prove that the writings were in her handwriting.

It is quite improbable that a defendant would permit her counsel to make such admission in her presence without objection if it were not a fact. If such admission had been made by her attorney in her presence to the district attorney in his office, proof thereof would have been admissible as evidentiary matter. We do not see why the fact that the admission was made on the trial and in open court robs it of its evidentiary character. But however that may be, the defendant herself afterward, while on the witness-stand, without objection testified that these same exemplars were in her handwriting. This clearly cured any error that may have been committed in the manner of their proof in the first instance.

Some other alleged errors of law in the admission of testimony are referred to by appellant, and we have carefully examined each of them, but find no error in any of them, and we do not consider them of sufficient importance to require special discussion.

F. Appellant also makes the point that the evidence was insufficient to justify the verdict. We have carefully read all the evidence in the record. While it is a case of circumstantial evidence, we are justified in saying that it is a very convincing one of the guilt of the defendant. No good purpose will be served by detailing the evidence, which shows a re-

markably cruel act, resulting as it did in the death of two persons and illness of several who partook of the poisoned candy.

The evidence in the record is quite sufficient to justify the verdict.

G. Complaint is made that the district attorney was guilty of misconduct during the taking of evidence in the case and in his argument to the jury. We have examined the record carefully as to the various assignments of misconduct, and find nothing that will justify a reversal. We find that whenever the alleged misconduct of the district attorney was at all serious, the court, by proper and timely admonitions to the jury, guarded against any injurious effect therefrom. Thus, where the district attorney characterized a question asked by the attorney for defendant as a cowardly statement, the court at once instructed the jury that such remark of the district attorney was not evidence, and was not to be considered by them, and should be disregarded by the jury.

Also, when defendant objected to the use of a microscope by the district attorney during his argument, the court sustained the defendant's objection, and admonished the jury not to allow the action of the district attorney in this matter to influence them in regard to their verdict, but that they must render their verdict upon the evidence and the law, and upon nothing else.

So, too, when the district attorney referred to the Bowers case, the court sustained the position taken by the defendant, and concluded his remarks by this statement to the jury: "When other cases are mentioned of that sort, and such remarks made as have just been referred to, they are not to be considered in this case, not to be considered by you as evidence in any manner or form."

But without discussing each assignment of misconduct, it is sufficient to repeat that we find nothing under this head to justify a reversal of the judgment or order.

H. "Errors in the charge of the Court."

Under this head our attention is very briefly called to several alleged errors in the charge to the jury, which we shall now notice.

1. At the close of an instruction to the effect that the jury must determine all questions of fact, but must receive the law from the court, the court used this language: "If you do so,

no harm can come from my errors, if I commit any, for a Supreme Court sits to correct them, and the jury should not assume to exercise the functions of that tribunal.''

This but emphasizes what had been before said as to the duty of the jury to be governed by the instructions of the court as to the law of the case, and certainly cannot be said to contain any erroneous statement of law.

2. The instruction concerning the evidence as to the relations existing between defendant and John P. Dunning was entirely proper, and clearly designed to limit the effect of such evidence to the proof of motive. As we have heretofore shown, such evidence was admissible upon the question of motive, and the instruction of the court was designed to protect the defendant from the possibility that the jury might allow it to otherwise prejudice defendant.

3. The court did not err in instructing the jury ''That a malicious and guilty intent is conclusively presumed from the deliberate commission of an unlawful act for the purpose of injuring another.'' (Code Civ. Proc., sec. 1962, subd. 1; *People* v. *McGlade*, 139 Cal. 66, [72 Pac. 600].)

4. The court charged the jury as follows: ''You are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in your mind, against a less number, or against a presumption of law or other evidence satisfying your mind; in other words, it is not the greater number of witnesses that should control you where their testimony is not satisfactory to your minds, against a less number whose testimony does satisfy your minds, and produces moral conviction that they are telling the truth. It is upon the quality of the testimony rather than the quantity, or the number of witnesses, that you should act, providing it produces in your minds this moral conviction, and satisfies you of its truthfulness.''

The first part of the instruction is taken from the statute (Code Civ. Proc., sec. 2061, subd. 2), and that which the court added is but an amplification of what is taken from the statute.

5. After giving the well-known charge upon reasonable doubt from the Webster case [*Commonwealth* v. *Webster*, 59 Mass. 295, 52 Am. Dec. 711], the court further charged the jury to the effect that the term ''reasonable doubt'' does not mean a ''mere possible doubt, a conjectural doubt,'' nor ''a

doubt which is merely capricious,'' and more to the same effect. The instruction is substantially the same as the instruction approved in *People* v. *Yun Kee,* 8 Cal. App. 82, [96 Pac. 96], except that it omits the only portion of the instruction in the Yun Kee case that was even criticised, and when read in connection with the preceding charge was entirely correct.

6. The instruction as to the effect of the presumption of innocence, so far as it was not taken from a requested instruction of defendant, is substantially the same as was approved in *People* v. *Winthrop,* 118 Cal. 85, [50 Pac. 390], and clearly was in no sense erroneous.

7. The charge of the court to the effect that in considering the weight and effect to be given to the testimony of witnesses the jurors have the right, among other things, to "consider the consequences resulting to a witness, if any, from the result of the trial,'' is not open to the criticism "that it singles out the defendant.'' The language of the court is general, and simply lays down a principle without making any special application to any particular witness. As was said in *People* v. *Amaya,* 134 Cal. 539, [66 Pac. 797], "the proposition is general and abstract, not indicating any particular witness as being, in the opinion of the court, subject to its application.'' The application of the principle was left to the jury. The instruction is fully supported by *People* v. *Amaya,* 134 Cal. 539, [66 Pac. 797]; *People* v. *Benc,* 130 Cal. 159, [62 Pac. 404].

8. The appellant criticises the charge of the court on the question of "motive.'' A substantial part of this instruction was taken from an instruction requested by defendant. The criticism made is that the charge is an instruction upon a matter of fact. The portion given at the request of the defendant is in these words: "When the evidence fails to show any motive to commit the crime charged on the part of the accused, this is a circumstance in favor of innocence. And in this case, if the jury find upon careful examination of all the evidence that it fails to show any motive upon the part of the accused to commit the crime charged against her, then this is a circumstance which the jury ought to consider in connection with all the other evidence in the case in making up their verdict.'' In addition to this, the court charged that the *presence* or *absence* of any motive to commit the homicide

charged against defendant was a circumstance to be considered by the jury in connection with all the evidence in the case, and if no motive was apparent that this was a circumstance in favor of innocence and should be so considered. The court also stated that the presence or absence of motive increases or diminishes the presumption of innocence, and can have no other function. Having asked and obtained the instruction which was given as to the effect of absence of motive, it does not lie in the mouth of defendant to complain that the court gave the correlative instruction as to the presence of motive. (Upon the subject of motive, see *People* v. *Durrant,* 116 Cal. 208, [48 Pac. 82].)

9. The court explained to the jury what is meant by circumstantial evidence, and gave instructions in regard thereto, several being given at the request of defendant. Appellant now says: ''The charge of the court as to the value and effect of circumstantial evidence is an argument in favor of that class of evidence,'' but fails to point to any statement in the instructions in support of this contention. After a careful examination of the instructions on circumstantial evidence, we have failed to find anything that can fairly be said to be argumentative.

10, 11 and 12. Appellant finally criticises some general observations made by the court intended to guard the jury against being moved by pity for defendant, or prejudice or passion that might be caused by the heinous nature of the crime, and to impress upon them the serious nature of the duties they were called upon to perform. We find nothing of merit in this criticism.

In conclusion, we will say that after a careful examination of the whole record we are unable to find any just cause for reversing the judgment of conviction in this case, but are of opinion that the judgment and orders should be affirmed, and it is so ordered.

Cooper, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 21, 1908.