SHAW, J.
The charge on which appellants were convicted is that in the city of Long Beach, they “wilfully and unlawfully, by invitation and/or device, did prevail upon persons to visit a place kept for the purpose of gambling, to-wit, the ‘Johanna Smith’, a ship anchored off the coast of the city of Long Beach”. This is alleged *778 to be a violation of section 318 of the Penal Code, which reads in part as follows: “Whoever, through invitation or device, prevails upon any person to visit any room, building or other places kept for the purpose of gambling or prostitution, is guilty of a misdemeanor.”
Appellants contend that a ship does not come within the provisions of this section of the code, relying on the rule of ejusdem generis to cut down the meaning of the word “places” so as to exclude ships from its purview. Many cases are cited in which general terms have been limited by reference to preceding particular terms, but we do not deem it necessary to review them, because we can discern no genus of places broad enough to include all rooms, and buildings that might not also include ships. The word “building” in its primary sense means merely, “that which is built” (Webster’s Dictionary), but usually indicates some sort of edifice or structure located on or affixed to land. It has been held to include a railroad car, which, while located on land, is certainly not affixed to it. (Hardin v. State, 92 Neb. 298 [138 N. W. 146]; State v. Lintner, 19 S. D. 447 [104 N. W. 205].) The word “room” is defined to mean, “Space inclosed or set apart by a partition; an apartment or chamber.” (Webster’s Dictionary.) A room may as well be on a ship as on shore; in fact, the spaces assigned to passengers on a ship are known as staterooms. In view of the manifest purpose of section 318 to further the suppression of gambling and prostitution, we cannot think the legislature intended to draw any fine distinctions as to the nature of the places put under its ban, and we hold that the words enumerating those places are used in their most general sense, and as so used include ships. See Coleman v. State, 13 Ala. 602, and Dickey v. State, 68 Ala. 508, holding that a steamboat or ferry-boat is a place, within the meaning of a statute prohibiting gambling in public places.
Appellants also attack the judgments on the ground that the evidence shows the “Johanna Smith”, at the time of the offense charged, to have been on the high seas and therefore entirely beyond the jurisdiction of the state of California, or at least in Orange County, and therefore, beyond the criminal jurisdiction of the Long Beach Municipal Court, claiming that, for one or the other of these *779 reasons, the offense is without the jurisdiction of the municipal court. In the view we take of the matter the position of the ship is immaterial. To state our reasons for this conclusion requires some further interpretation of section 318.
The conduct constituting the offense at which this section is aimed is defined in the words “through invitation or device, prevails upon any person to visit any room, building or other places”, the remainder being merely descriptive of the places. It is plain that the offense is not committed by the mere passing of an invitation or use . of a device. If it were, no further words describing the offense would be necessary, and the sentence might have been completed by the use of the word “requests”, or other equivalent term • but instead thereof we find the expression “prevails upon”, whose meaning goes far beyond the mere giving of an invitation. The primary sense of the word “prevail” is, “To gain the victory; have the mastery; triumph.” (Webster’s Collegiate Dictionary.) In a secondary or figurative sense it means, according to the same authority, “To bring persuasion, inducement or urgency to bear (on, upon or with) successfully.” (Italics ours.) Similar definitions are given by other lexicographers. In section 318 the word is unquestionably used in the sense last stated, and by its use the legislature declared that the offense is not completed unless the person subjected to an invitation or device actually goes to a place described in the section. Without this there might be an attempt to violate section 318, but nothing more, and since the appellants were found guilty of a completed offense, we are not here concerned with an attempt. This statute is very similar to a Minnesota statute which was under consideration in State v. Stickney, 118 Minn. 64 [136 N. W. 419], That statute declared it unlawful “to induce, entice or procure . . . any female person ... to enter any house of ill fame”, and the court there declared that this crime is not complete and no conviction can be had therefor unless the female actually enters the house of ill fame. Our statute of 1929 regarding gambling ships (Stats. 1929, p. 703) is an example of a statute more broadly worded and shows by contrast the effect of section 318. Section 2 of the act of 1929 makes it “unlawful for any person, within this *780 state, to solicit, entice, induce, persuade or procure . . . any person to visit any gambling ship”. By the use of the word “solicit”, this statute makes it clear that the conduct of the person solicited is not material to the offense; and this difference between the statutes shows that the act of 1929 has not by implication repealed section 318 as to gambling ships.
But notwithstanding the conclusion just reached, we think the gist of the offense under section 318 is the giving of the invitation or the use of the device by which some person is prevailed upon to visit a place described in the section. The actual visiting is not an act done by the defendant, but a result of his acts, the happening of which is by the section made a condition to his criminal responsibility. Hence' we think it may fairly be said that the crime is committed at the place where the defendant delivers the invitation or makes use of the device, and if that place is within the jurisdiction of the court, it is enough; .that jurisdiction is not affected by the location of the place visited by the other person. The purpose of the statute is to protect the inhabitants of this state against being led into evil courses, and it matters not to that purpose whether the places of evil-doing are in this state or outside of- it. Such was the conclusion reached in State v. Stickney, supra, where the acts of enticement occurred and the prosecution was had in Minnesota, but the house of ill fame entered was in Wisconsin, and it was held that the crime was committed in Minnesota and was within the jurisdiction of the Minnesota courts.
But if it be conceded that we are wrong in this conclusion, and that the commission of an offense under section 318 is consummated at the place visited, nevertheless the acts of invitation, etc., would constitute a part of the offense, the crime would be partly committed where those acts were done, and if any of them were done in Long Beach, as charged, the Long Beach court would have jurisdiction of the offense, under either section 27 or section 781 of the Penal Code, as the case may be. Section 27 provides, in ‘part: “The following persons are liable to punishment under the laws of this state: 1. All persons who commit, in whole or in part, any crime within this state.” Even if the “Johanna Smith” was on the high seas, yet *781 if the invitation Avas given in this state, the offense may be prosecuted here, under this section (People v. Botkin, 132 Cal. 231 [84 Am. St. Rep. 39, 64 Pac. 286]; People v. Chapman, 55 Cal. App. 192, 197 [203 Pac. 126]); and it matters not, to this conclusion, that there may be no laAV on the high seas by Avhich the transaction in question is made a crime. (People v. Chapman, supra; see, also, People v. Staples, 91 Cal. 23, 29 [27 Pac. 523].) On the other hand, if the ship was in Orange County, the prosecution may be had in Los Angeles County under section 781, Avhich reads as follows:
“When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county. ’ ’
Since the guilt of the appellants, as well as the jurisdiction of the court, depends on the commission of acts of inducement, and there appears to be no question that such acts as were done in that respect were done in Long Beach, we proceed to consideration of the question whether acts sufficient to show the guilt of the appellants were proved. It may be stated at once that as to several of them there is no showing that they personally did anything amounting to a direct invitation to anyone to visit the “Johanna Smith”. The respondent contends as to them that there was a conspiracy of Avhich they were members, the object of which was to prevail upon other persons to visit the “Johanna Smith”, and that hence these persons were criminally liable for acts which were done by other persons in furtherance, as it is claimed, of this conspiracy. Here it should be noted that the complaint charges an offense committed November 29, 1930, and that after evidence had been introduced as to occurrences on several different days, the prosecutor was required to elect on which he Avould rely for conviction, and elected the date charged in the complaint. Hence unless there be found evidence of an offense committed on that date, the conviction cannot be upheld. (People v. Williams, 133 Cal. 165, 168 [65 Pac. 323]; People v. Hatch, 13 Cal. App. 521, 534, 535 [109 Pac. 1097]; People v. Bartnett, 15 Cal. App. 89, 94 [113 Pac. 879]; People v. Harlan, 29 Cal. App. 600, *782 603 [156 Pac. 980].) The evidence as to acts done on other days was probably introduced for the purpose of proving the conspiracy, and was proper for that purpose.
The evidence shows that the ship “Johanna Smith” was on the date charged and for several months prior thereto had been anchored in the ocean off Long Beach. The character of this ship is not seriously questioned by appellants, and the evidence is 'ample to show that during all of this time and particularly on November 29th it was “kept for the purpose of gambling”. Its character in that respect is not affected by the fact that in addition to its gambling equipment it also contained facilities for eating and dancing. (27 Corpus Juris, 1010; State v. Eaton, 85 Me. 237 [27 Atl. 126].)
It also appears that during this time persons visiting this ship were transported to and from it by a number of speed-boats called “water taxis”. These boats ran from a dock at No. 1415 West Seventh Street in Long Beach, at which place, in addition to the docking facilities, there were a free parking place for automobiles and a shed which contained a lunch-counter, an office and the gang-plank for entering and leaving the boats. This line of boats and the dock and other appurtenances were owned and operated by appellants Chase and Casey, and all of the other appellants were their employees. On the street in front of the dock there was a Neon sign about 8x12 feet in size, which read “Visit the Johanna Smith cabaret ship, dining and dancing. Get water taxi here.” A free bus was operated from the business district of Long Beach to this dock. On it was a sign reading, “Free bus to 1415 W. 7th St. Water Taxi.” There is no direct evidence to show who operated this bus or that it was running on November 29th, although it did run a few days before.
The operators of the “Johanna Smith” maintained a box for receipt of mail on the street in front of the dock, and on receiving inquiries regarding the ship would mail out cards, each of which stated that it “entitles you and your party to one free round trip speedboat ride” to the ship, that free busses run from Long Beach to the dock at 1415 W. 7th St., and that boats leave this dock every 20 minutes. They also gave away these cards on the ship, distributing ■ altogether 10,000 of them every week, and gave away other tickets purporting to be complimentary passes for one *783 “round trip West Seventh Street Water Taxis, 1415 W. 7th St., Long Beach”. Like tickets were given away at the docks. These tickets and cards were accepted for passage by the operators of the speed-boats. Persons who did not have them were charged from ten to fifty cents for passage to the ship, or if they declined to pay were carried free. Tickets collected were handed to someone on the ship by the operators of the boats and cash was handed to appellant Casey. No fares or tickets were collected oh return trips. Persons who sent in by mail inquiries about the ship also received in reply a pamphlet describing the attractions to be found on the “Johanna Smith”, including the gambling games. These pamphlets stated that the trip to the ship is made on speed-boats which leave the dock at 1415 W. Seventh Street, and that free busses from Long Beach connect with these “water taxis”. There was also a picture of the bus showing that in addition to the sign above mentioned the words “Johanna Smith, Amusement Ship” were conspicuously painted on the cover of its spare tire. On the back of this pamphlet was printed a coupon reading “Pass 2 Free complimentary to West Seventh Street Water Taxis”. About 60,000 of these pamphlets were printed and delivered to the dock at 1415 W. Seventh St. Some were received there by appellant Ellis and others by appellant Casey. Casey opened one bundle of them and looked at it, and at another time gave one of the pamphlets to a police officer. On various occasions in November several hundred persons visited the “Johanna Smith”, and on the evening of November 29th the visitors numbered about 1500 persons.
On November 29th the appellants Chase and Casey were actively engaged in operating the West Seventh Street Water Taxis, and the other appellants were assisting them. Connor and Montoya were operating one of the speed-boats, Ellis was maintaining order at the head of the gang-plank and keeping an account of the passengers, and Bateman and Pullman were helping dock the boats and helping the passengers off and on. The five appellants last named had worked at the dock for at least a month. Some of them admitted seeing the sign and the bus above mentioned and the jury might well have believed that the others saw them. Some of them disclaimed knowledge, of the destination of the water taxis and of the character of the “Johanna *784 Smith”, but as one of them said, ‘ ‘ everybody knows it was a gambling ship”, and the jury was justified in rejecting these disclaimers also. There is some suggestion in the evidence of the defendants that these speed-boats could be hired for trips to other places than the “Johanna Smith”, but no showing that any of them ever did go elsewhere during a period of five months including November 29th, except on one occasion.
Taking all the evidence together, we think it is sufficient to warrant the jury in finding that the “Johanna Smith” was a place kept for the purpose of gambling, that there was a conspiracy by the appellants Chase and Casey and the operators of that ship to prevail upon persons to visit it, that the other appellants, with knowledge of the nature and purpose of this conspiracy, aided and abetted their co-defendants in carrying it out, and hence that all the appellants are equally responsible criminally for what was done in pursuance of it.
A police office who went out to the “Johanna Smith” early in the evening of November 29th and remained there an hour and a half testified that 43 other passengers went out with him on the same speed-boat, and that he saw 1500 persons on the ship. Other officers were stationed in and around appellants’ dock during the same period of time, and their testimony presents a picture of continual activity on the part of the various appellants in running boats, directing passengers and supervising the loading and unloading of the boats. These officers also saw many people park cars in the parking place and enter the dock, about 100 cars being parked there at one time, and observed the entry of many persons to the dock and upon the boats. The jury could properly infer that a large number, if not all, of the 1500 persons who were on the ship that evening reached it on appellants’ speed-boats.
It was necessary, of course, for the prosecution to show also that the appellants made use of some invitation or device and thereby prevailed upon some of these persons to visit the ship. An invitation, while it may be oral or written, need not be either; it may be given by any conduct which conveys the idea. The Neon sign maintained at the dock and above described constituted an invitation to all who read it to visit the “Johanna Smith”. The same is true of the pamphlets and the tickets. *785 The sign faced the street, where it could he read by all who passed by or approached the dock. We think the combination of the speed-boats, the dock, the sign, the free parking place, and the free tickets on the speed-boats, which were given away in quantities of 10,000 every week, also constituted a device, the purpose of which was to prevail upon persons to visit the “Johanna Smith”. A device is defined as, “a contrivance; an invention; project; scheme; often, a scheme to deceive; a stratagem; an artifice”. (Webster’s Dictionary; 18 Corpus Juris, 1032.) The combination to which we have just referred answers that description.
There is no direct evidence showing what induced any person other than a police officer to visit the “Johanna Smith” on November 29th, but the fact regarding this matter, like any other, may be proved by circumstantial evidence. In order to establish an offense under section 318, it is not necessary to show that the invitation or device was the sole cause moving a person to visit one of the places therein described. If it was a moving cause of his visit, that is sufficient. In the ordinary case the jury is justified in inferring, from the fact that a person, after being invited to visit a place, does so, that he was by means of the invitation prevailed upon—-that is, successfully urged—to make the visit, without having before them the information necessary for making an analytical investigation of his state of mind to ascertain whether some other cause also influenced him. Here there is proof, not only of invitation and device put forth by appellants, but also that so many persons came within their range and visited the ship as to support an inference that some of these persons, at least, were influenced by the invitation and device. Under the circumstances of the case it was a question of fact for the jury whether the invitation and device of appellants were in whole or in part the causes moving any of the persons who visited the “Johanna Smith” on November 29th to do so, and with their decision upon it we cannot interfere.
The judgment and order appealed from are affirmed.
McLucas, P. J., and Bishop, J., concurred.
Rehearing denied.