[Crim. No. 805.  Second Appellate District, Division Two.—November 15, 1921.]

## THE PEOPLE, Respondent, v. R. E. CHAPMAN, Appellant.

[1] CRIMINAL LAW—CONVICTION ON CERTAIN COUNTS OF INDICTMENT—FAILURE TO PASS SENTENCE—APPEAL.—Where a defendant has never been sentenced on charges contained in certain counts of the indictment on which he is found guilty, there is, as to such counts, no judgment from which an appeal can be taken.

[2] ID.—ORDER DENYING NEW TRIAL—APPEAL—VALIDITY AS TO CERTAIN COUNTS.—Whether an order denying a motion for a new trial made under section 1181 of the Penal Code is erroneous as to certain counts on which the defendant was convicted need not be considered on appeal, where sentence had not been passed thereon, since the defendant is entitled to a new trial as to the same under section 1202 of the Penal Code.

[3] ID.—OBTAINING OF MONEY BY FALSE PRETENSES—VENUE.—The crime of obtaining money or property by false pretenses is consummated at the place where the money or property is obtained from the defrauded person, regardless of where the false pretenses may have been made, and, therefore, the place where the money or property is obtained is the place where, ordinarily, the venue should be laid.

[4] ID.—OBTAINING OF MONEY OUTSIDE OF STATE—FALSE PRETENSES MADE WITHIN STATE—AMENABILITY TO STATE LAW.—In view of subdivision 1 of section 27 of the Penal Code, which provides that all persons who commit, in whole or in part, any crime within this state are liable to punishment under its laws, a person who makes in this state any false or fraudulent representation whereby money or property is obtained without the state is punishable under section 532 of the Penal Code.

[5] ID.—PERSONS PUNISHABLE FOR CRIME—CONSTRUCTION OF CODE.—The words "any crime," as used in subdivision 1 of section 27 of the Penal Code, mean any offense which, if committed wholly within this state, would constitute a crime against the laws thereof.

[6] ID.—INCRIMINATING DOCUMENTS—SECONDARY EVIDENCE.—A court cannot compel a defendant in a criminal case to produce any incriminating writing, and it is for this reason that, ordinarily, the prosecution may give secondary evidence of the contents of an incriminating document whenever it appears *prima facie* that it is in the possession of the accused.

---

[7] Id.—Misconduct of District Attorney—Demand for Production
of Incriminating Writings—Appeal—Insufficient Showing of
Reversible Error.—Misconduct on the part of the district attor-
ney in asking counsel for the defendant to produce incriminating
writings without a *prima facie* showing that the same were in
defendant's possession is not a sufficient ground for reversal in
view of section 4½ of article VI of the constitution, in the
absence of a showing that such writings, if produced, would have
worked a damage to the defendant.

[8] Appeal—Affirmative Showing of Error—Constitutional Law.
In view of section 4½ of article VI of the constitution, injury
is no longer presumed from error, and it is incumbent upon the
appellant to show affirmatively that the error upon which he
relies was prejudicial, and the rule applies even to an erroneous
invasion of a constitutional right.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch, Deputy
Attorney-General, and John W. Maltman for Respondent.

FINLAYSON, P. J.—By an indictment containing twelve
counts, defendant, in each of six counts, was charged with
the crime of obtaining money by false pretenses, as defined
in section 532 of the Penal Code, and in each of the six
remaining counts he was charged with the crime of em-
bezzlement. He was acquitted of the embezzlement charges
and convicted on each of the counts charging him with the
crime of obtaining money by false pretenses, the jury re-
turning a separate verdict on each count. On four of the
verdicts finding defendant guilty of obtaining money by
false pretenses, namely, on the verdicts finding him guilty
as charged in the first, second, fifth, and sixth counts of
the indictment, the court passed sentence, a separate judg-
ment being pronounced on each of said four verdicts.
Before any judgment was pronounced, an application for a
new trial was made by defendant on certain of the grounds
mentioned in section 1181 of the Penal Code. The motion

for a new trial was denied, and thereafter the court pronounced judgment upon each of the four verdicts whereby defendant had been found guilty as charged in said first, second, fifth, and sixth counts.

In two of the counts whereby he was charged with obtaining money by false pretenses—two counts upon which no judgment has ever been pronounced, namely, counts nine and ten—defendant was charged with having defrauded one F. J. McCann of certain sums of money by certain false and fraudulent representations. As to these two counts there was a variance between the allegations and the proof, in that the evidence showed that the person defrauded was not F. J. McCann, but the F. J. McCann Brokerage Company, a corporation. Though a verdict of guilty was returned on each of these two last-mentioned counts, the court, for reasons which developed after the motion for a new trial had been denied, but which we do not find it necessary to recapitulate, declined to pass sentence upon the verdicts of guilty that were rendered thereon. The time for pronouncing judgment on the verdicts finding defendant guilty of the charges contained in counts nine and ten has long since passed, and the trial court should, therefore, and doubtless will, grant a new trial of the issues presented thereby whenever defendant shall see fit to make application therefor under section 1202 of the Penal Code, whereby it is provided that if judgment is not pronounced within the time fixed therefor by the court, or the time to which it is continued under the provisions of section 1191, "then the defendant shall be entitled to new trial."

Defendant has appealed from each of the four judgments pronounced on the verdicts finding him guilty as charged in the first, second, fifth, and sixth counts, and has likewise appealed from the order denying the motion for a new trial which was made by him under section 1181 of the Penal Code before sentence was passed. [1] Since defendant has never been sentenced under the charges contained in the ninth and tenth counts, there is, as to those two counts, no judgment from which an appeal can be taken. [2] Nor is it necessary to consider whether the order denying defendant's motion for a new trial on the issues presented by counts nine and ten should be reversed by reason of the variance between the allegations and the proof, because, as

we have stated, as to these two counts, the defendant, whenever he shall conclude to make application under section 1202, clearly is entitled to a new trial upon the ground that no judgment was passed within the time allowed by law. Indeed, we do not understand that, as to these counts nine and ten, defendant's counsel is seeking a reversal of the order denying his motion for a new trial on the ground of any variance between the *allegata* and *probata*.

Defendant's real contentions on this appeal are: (1) That the crime charged in each of the four counts upon which he was found guilty and sentenced, that is, the crime charged in counts one, two, five, and six, respectively, was committed outside the state of California, and that, therefore, the courts of this state have no jurisdiction thereof; and (2) that a question which was propounded by the district attorney to defendant's counsel in the presence of the jury, asking counsel if he had in his possession certain writings, constituted prejudicial misconduct, necessitating a reversal of the judgments pronounced on the four counts upon which defendant was sentenced. We think that each of these contentions lacks merit.

In each of the four counts upon which he was found guilty and sentenced, defendant is charged with having obtained the moneys in the county of Los Angeles. But the evidence discloses that the moneys were obtained in a manner substantially as follows: Defendant drew certain drafts upon the Chaddock Carney Sales Company of Boston, Massachusetts, as the drawee. That company, it seems, was acting for and as the agent of the persons alleged to have been defrauded. The drafts were delivered by defendant, at Los Angeles, to the Hellman Commercial Trust and Savings Bank for collection. That bank, a corporation engaged in the banking business at Los Angeles, forwarded the drafts to its banking correspondent at Boston. In the regular course of business the drafts were presented to the drawee, the Chaddock Carney Sales Company, at Boston, and were there paid by the drawee by means of checks drawn by it upon its local bank at Boston. The drawee's local bank then remitted the money to the Boston correspondent of the Los Angeles bank, the Hellman Commercial Trust and Savings Bank, and in due time the latter institution was credited with the amounts by its Boston corre-

spondent. In this way defendant was enabled to and did receive the moneys at Los Angeles from the Hellman Trust and Savings Bank, or was credited therewith by that bank. Upon these facts it is contended that the moneys were paid by the defrauded persons at Boston, and hence that the moneys were obtained, not in California, but in Massachusetts, and that, therefore, if any crime was committed by defendant it had its consummation outside of the territorial jurisdiction of this state.

[3] Without doubt, the crime of obtaining money or property by false pretenses is consummated at the place where the money or property is obtained from the defrauded person, regardless of where the false pretenses may have been made, and, therefore, the place where the money or property is obtained is the place where, ordinarily, the venue should be laid. (*People* v. *Cummings*, 123 Cal. 269 [55 Pac. 898].) In *State* v. *Shaeffer*, 89 Mo. 271 [1 S. W. 293] the defendant, who was prosecuted in the Missouri court for obtaining money by false pretenses, had drawn a draft in that state on the bank account of the drawee in New York, the money being collected through the agency of two other banks in New York and Missouri, respectively. It was held that the money was obtained in New York; that, therefore, the crime was consummated in that state and not in Missouri; and that, as a consequence, the Missouri court had no jurisdiction. The appellant here, claiming that the facts of this case are, in all substantial respects, analogous to those presented to and passed upon by the Missouri court in the Shaeffer case, confidently asks for a reversal at our hands. It is not necessary to enter upon any analysis of the evidence contained in the record before us for the purpose of determining whether the moneys were obtained by this defendant in Boston or in Los Angeles; for in this state we have a code provision (subd. 1, sec. 27, Pen. Code) under which, generally speaking, a defendant may be convicted even though the final act necessary to consummate and complete his crime may have taken place outside of this state.

[4] Section 27 of the Penal Code, so far as applicable, reads: ''The following persons are liable to punishment under the laws of this state: 1. All persons who commit, in whole or in part, any crime within this state.'' It is not contended

that the legislature may not declare it to be an offense against the sovereignty of California to make false and fraudulent representations in this state whereby money is obtained elsewhere; and the validity of subdivision 1 of section 27 is not challenged. The sole question, therefore, which is one of interpretation of that code provision, is this: Is defendant, under the facts charged and proved, guilty of the crime denounced by section 532 of the Penal Code, and is he punishable under subdivision 1 of section 27, notwithstanding the money may have been obtained in Boston?

Without doubt, our legislature has no extraterritorial jurisdiction; and when it forbids, in unqualified terms, the doing of an act, it must always be understood that the thing forbidden is something done in his state. But if, as we hold, the legislature, in subdivision 1 of section 27, has declared, in effect, that all persons who make in this state any false or fraudulent representations whereby money or property is obtained without the state are punishable just as though all the acts had taken place in this state, then defendant was properly convicted, notwithstanding the fact that a very substantial part of the crime denounced by section 532 may have taken place in Massachusetts.

[5] The words "any crime," as used in subdivision 1 of section 27, mean any offense which, if committed wholly within the state of California, would constitute a crime against the laws of this state. The provision was designed to apply to the commission within the jurisdiction of this state of any essential part of a crime *as defined by the laws of this state,* even though, by the commission elsewhere of other parts of the crime, the final consummation of the offense may have taken place without the state. New York has a similar statutory provision. After some wavering, the highest court of that state has finally adopted an interpretation of the New York statute that accords with what we think is the proper construction to be placed upon the corresponding statutory provision in this state—subdivision 1 of section 27 of our Penal Code. The New York court of appeals now holds, as do we, that under a statute such as this, one who makes false or fraudulent representations in a state where such statutory provision obtains is guilty of the crime of obtaining money by false pretenses even though the money or property be obtained in

another state whose laws do not make it an offense thus to defraud a person of money or property by false or fraudulent pretenses. It was so decided by the appellate division of the New York supreme court in the case of *People* v. *Arnstein*, 157 App. Div. 766 [142 N. Y. Supp. 842]. In reversing the decision of the appellate division in that case, one of the justices of the New York court of appeals held that, in adopting the code section of that state which corresponds with our section 27, it was not the intention of the legislature to enact any substantive law so as to make it an offense to commit in the state of New York a part only of a transaction denounced by the New York law as a crime, even though the remaining part of the whole transaction were committed in another state. The remaining six justices held that the statute was intended to give the state of New York jurisdiction of an offense commenced within that state but consummated beyond its borders. Of these six, three held that it was necessary that the transaction should also constitute a crime under the laws of the foreign state, the remaining three holding that it was not necessary that the transaction be made a crime by the laws of the state where the offense was consummated. (*People* v. *Arnstein*, 211 N. Y. 585 [105 N. E. 814].) The question again came before the court of appeals in *People* v. *Zayas*, 217 N. Y. 78 [Ann. Cas. 1917E, 309, 111 N. E. 465], where it was held that, under the code section of that state, which corresponds with section 27 of our Penal Code, a person who commits within the state of New York any crime, in whole or in part, is liable to punishment within that state; and it is not necessary that the transaction shall constitute a crime under the law of the foreign state where part of the acts are committed, it being sufficient that the transaction would be a crime under the laws of New York if it were committed entirely within that state. In that case the defendants were charged with larceny by obtaining property under false pretenses. The indictment alleged that the false pretenses were made in the state of New York, and that by reason thereof the complaining witness delivered money or property to the defendants in the state of Pennsylvania. The court of appeals held that the defendants were punishable just as they would be if each and all of the acts necessary to complete the crime had occurred in New York,

and that, therefore, the indictment was good, irrespective of the law of Pennsylvania, where the money or property was obtained. We are in entire accord with the reasoning of the New York court of appeals in the Zayas case, as well as that which was pursued by Chief Justice Willard Bartlett in his dissenting opinion in the Arnstein case. Not only does the interpretation there given to the New York code provision accord with the construction which our supreme court placed upon the corresponding code section of this state in *People* v. *Botkin,* 132 Cal. 231 [84 Am. St. Rep. 39, 64 Pac. 286], but, as was said by the appellate division of the New York supreme court in the Arnstein case (157 App. Div. 766 [142 N. Y. Supp. 846]), to hold that the test of jurisdiction is that the entire transaction is likewise made a crime by the laws of the state where the offense is finally consummated "would be to impute to the legislature an attempt to punish a violation of the statutory law of the foreign jurisdiction, which it could not constitutionally do."

For the foregoing reasons we are of the opinion that the defendant is guilty of the crime charged against him in the four counts upon which he was sentenced, notwithstanding the evidence may show that the money was obtained in the state of Massachusetts. His acts constituted the crime of obtaining money by false pretenses, as defined by section 532 of the Penal Code of this state. The false pretenses alone constituted an essential ingredient of that crime. They were made in this state. Therefore, under subdivision 1 of section 27, defendant is punishable under the laws of this state for the crime with which he was charged—that of obtaining money by false pretenses.

[6] One of the witnesses for the prosecution, during her examination by the district attorney, testified that she had received two written contracts at Butte, Montana; that after, reading and signing them, she had given them to a broker to be mailed to defendant in California for his signature; and that they had not been returned to her. Nowhere in the briefs is our attention called to any evidence tending to disclose the nature of the terms contained in either of these two contracts. So far as we are aware, neither writing may have contained anything that, by any possibility, could prove harmful to defendant or to his cause. After the witness had thus testified that she had given the

contracts to a broker to be mailed to defendant, and that they had not been returned to her, and after defendant's counsel had successfully objected to the introduction of any secondary evidence of the contents of the writings upon the ground that no proper foundation had been laid, the district attorney, addressing himself to defendant's counsel, said: "Mr. Gilbert, have you those contracts of Mr. Chapman?" Whereupon defendant's counsel said: "I assign that question as error." The district attorney immediately withdrew the question, but defendant's counsel insisted that he would not permit it to be withdrawn, saying: "I do not propose for it to be withdrawn. I assign the question of counsel propounded to me as attorney for the defendant in the presence of the jury, 'Mr. Gilbert, have you those contracts of Mr. Chapman in your possession?' as error and uncalled for." Whereupon the court rebuked the district attorney and admonished the jury as follows: "Now, just a moment. The district attorney has no right and should know that it is an invasion of the constitutional right of the defendant to be called upon to produce evidence. You should not have asked that question; you should not have made that demand; and I do not want anything of that kind to occur again in the case. The jury are instructed to disregard that statement of the district attorney and to absolutely remove it from their minds in the consideration of this case. The defendant is not called upon to produce any evidence and he cannot be required to produce any evidence and the people have no right to demand that he produce evidence; and any inference that might have crept into your minds by reason of the statement of the district attorney, which was highly improper, is to be absolutely removed from your minds in the consideration of this case. Proceed."

Appellant now assigns as reversible error the conduct of the district attorney in requesting defendant's counsel to produce the writings. **[7]** It is axiomatic that the court cannot compel the defendant in a criminal case to produce any incriminating writing. It is for this reason that, ordinarily, the prosecution may give secondary evidence of the contents of an incriminating document whenever it appears *prima facie* that it is in the possession of the accused. (16 C. J., pp. 616, 617.) It was doubtless in view of this rule of law that the district attorney made the

demand of defendant's counsel to produce the contracts. It is probable that the district attorney regarded the evidence of the witness then on the stand as being sufficient to make out a *prima facie* showing that the contracts were in defendant's possession; and, defendant's counsel still objecting to the introduction of secondary evidence, the district attorney was doubtless prompted by the objection to make the request. If, in fact, the prosecution had shown, *prima facie*, that the contracts were in defendant's possession, then unquestionably appellant would not now be in a position to claim prejudice after having objected to the introduction of secondary evidence. (*People* v. *Rial*, 23 Cal. App. 714, 720 [139 Pac. 661].) But even though the prosecution may not have made a *prima facie* showing that the writings were in defendant's possession, and even conceding that, for that reason, it was error to seek to prove defendant's possession of the writings by asking his counsel to produce them, still there is no showing of prejudice. For, aside from the court's stern rebuke of the district attorney and its vigorous admonition to the jury to disregard the improper demand, there is nothing to show that the writings, if produced, would have worked any damage to defendant. Appellant, therefore, has failed to make any affirmative showing of reversible error. [8] The rule obtaining in some jurisdictions that prejudice is presumed from any error of law has been abrogated in this state. (Sec. 4½, art. VI, Const.; Pen. Code, sec. 1258; *People* v. *O'Bryan*, 165 Cal. 65 [130 Pac. 1042]; *People* v. *Stephens*, 29 Cal. App. 621 [157 Pac. 570, 572].) It is incumbent upon the appellant to show affirmatively that the error upon which he relies was prejudicial. (*People* v. *Lapara*, 181 Cal. 72 [183 Pac. 545].) This follows from the consideration that injury no longer is presumed from error. And the rule that, to justify the reversal of a judgment of conviction, it must affirmatively appear to the satisfaction of the reviewing court that the defendant may well have been substantially injured by the error complained of, applies to an erroneous invasion of even a constitutional right. (*People* v. *O'Bryan*, 165 Cal. 66 [130 Pac. 1042].)

The judgments and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.