[*Crim. No.* 1811. Fourth Dist. June 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. MATTHEW RICHARD BARTHEL et al., Defendants and Appellants.

Edgar G. Langford, J. Perry Langford and J. Robert O'Connor for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Herbert Davis, Deputy Attorney General, for Plaintiff and Respondent.

SHEPARD, Acting P. J.—This is an appeal by defendants from judgments of conviction of bookmaking and of recording or registering bets (Pen. Code, § 337a, subds. 1, 4), from orders granting probation and from orders denying defendants' motions for a new trial.

Defendants were charged in count one of the information with bookmaking under subdivision 1 of the section, and in count two of the information with recording or registering bets under subdivision 4 of the section. Both defendants were found guilty as charged in count one but only Linda was found guilty as charged in count two of the information. Probation was granted to both defendants.

## Facts

On the subject of probable cause for arrest, the following facts were adduced before the court out of the presence of the jury. Police officers Cochran and McLennan, on March 10,

1961, at about 5:30 p. m., were seated in their parked vehicle on Gamma Street just west of 47th Street. Cochran knew Matthew, knew that he was reputed to be a bookmaker, and had previously called Matthew to his office and advised him to quit bookmaking. Matthew then promised to follow such advice. Some two days or so prior to the 10th, Cochran had been advised by telephone by a man who had previously given Cochran reliable information regarding unlawful bookmaking activities on about a dozen occasions, but whose name was unknown to Cochran, that Matthew and Linda were again operating bookmaking and registering bets and that Matthew was operating with a Marvin Vale at 1810 Gamma Street, National City. Cochran also knew that Vale was reputedly a bookmaker and had seen Vale's record of arrests at police headquarters in San Diego. The informant had told Cochran that Matthew was driving a white Cadillac convertible and that Linda was operating the phone where the bets were received and registered.

In the presence of the jury there was adduced the following evidence: At the time in question Cochran and McLennan were watching for Barthel and Linda. Barthel committed a traffic violation and was arrested by the officers. During the arrest Linda was observed to be apparently putting something under the seat of the car. Officer Grimm, stationed in another vehicle about a block away, was called by radio as the arrest was about to occur and arrived within one minute. All activities, discussion and search at arrest occupied not more than three minutes. At Cochran's request, Grimm looked under the seat where Linda had been seen to apparently place something and found the bookmaking and bet registry papers. These were later identified as such by an expert during trial. The handwriting on such papers was identified during trial as that of Linda.

Matthew said to the officers, " I have not been bookmaking in the city. We have been operating in the county." En route to police headquarters Matthew said he needed money and felt that taking bets on horses again was an easy way to make a few dollars. He again said he had not been making book in the city but was in the county. During the period from first arrest to arrival at police headquarters Matthew and Linda were together. Linda made no denial of Matthew's statements.

At the police station Mr. Barthel admitted he had set up the bookmaking operation and both admitted that Linda had been on the telephone taking bets since March 1, 1961. Matthew

admitted having a partner but refused to name him. Linda repeated an attempted bribe, first made just after the arrest; that is, to give the officers the two $100 bills she was carrying if they would forget about the charges. She told the officers of the difficulties in starting up the operation and in collecting the bets, and that the take on the day of their arrest was $300. She stated the "phone spot" was located east of San Diego City, in San Diego County.

Matthew at trial denied making the admission attributed to him; denied bookmaking or registering bets; denied the traffic violation and claimed that on the day in question he had taken Linda to the Mexican border at 9:30 a. m. and picked her up at 4:40 p. m. at the same place. Linda failed to take the witness stand.

### Corpus Delicti

The defendants contend that the corpus delicti of neither count was proved by evidence other than the extrajudicial statements of the defendants. ■ The corpus delicti must be proved by evidence outside the extrajudicial declarations and statements of defendant. (*People* v. *Mehaffey,* 32 Cal.2d 535, 544 [1] [197 P.2d 12] ; *People* v. *Corrales,* 34 Cal.2d 426, 429 [1-3] [210 P.2d 843].) Specifically, defendant maintains that there is lack of jurisdiction in that there is no evidence that any act of bookmaking or registration took place in California. (*People* v. *Buffum,* 40 Cal.2d 709, 716 [4-5] [256 P.2d 317].) ■ However, as was said in *People* v. *Mehaffey, supra,* at page 545 [2-3], "But it is likewise well settled that to authorize their reception in evidence and consideration by the jury, the prosecution is not required to establish the corpus delicti by proof as clear and convincing as is necessary to establish the fact of guilt; rather slight or prima facie proof is sufficient for such purpose. [Citations.] It may be proved by circumstantial evidence and by inferences reasonably drawn therefrom." (See also *People* v. *Corrales, supra,* 429 [1-3] ; *People* v. *Cole,* 158 Cal.App.2d 183, 185 [3] [322 P.2d 29].)

■ Jurisdiction can be shown by circumstantial evidence and may be established by a preponderance of the evidence. (*People* v. *Cavanaugh,* 44 Cal.2d 252, 262 [1-2] [282 P.2d 53] ; certiorari denied 350 U.S. 950 [76 S.Ct. 325, 100 L.Ed. 828].)

■ Here all the activities related by the arresting officers took place in San Diego County. The only evidence of the possible absence of Linda outside of San Diego County was

the testimony of defendant himself that he left his wife off at the Border on March 10 at 9:30 a. m. and picked her up at 4:30 p. m. and that he remained in San Diego County himself. The jury were not compelled to believe all of his testimony or any particular part thereof. From these facts and the testimony of the expert witness regarding the modus operandi as to bet registration slips found in defendant's car and the "phone spot," it could reasonably be inferred that each of the crimes charged was committed in San Diego County, California. (Pen. Code, § 27.) The court properly instructed the jury as to jurisdiction. ■ There was prima facie proof of the corpus delicti. The extrajudicial statements of the defendants were properly admitted into evidence. (*People* v. *Koerls,* 58 Cal.App.2d 9, 11 [135 P.2d 614]; *People* v. *Levene,* 107 Cal.App.2d 125, 127 [1-2] [236 P.2d 604]; *People* v. *Cole, supra,* p. 186 [5].) The question of probable cause for search of defendants' car is not raised on this appeal. In any event, we are satisfied the evidence was sufficient in that respect.

## Newspaper Article

■ Defendants next complain of a newspaper article apparently read in part or whole by some members of the jury. Apprised of the publication of the article, the trial judge asked the jurors if any had read it, and was informed by one that he had "skimmed" some article and four others held up their hands. Thereupon the judge instructed the jurors:

"Now, in connection with anything that you may have read—any of you may have read in that newspaper or in any other newspaper, or anything that you may have heard over the radio or television, you are instructed that such accounts furnished by any news medium are not evidence which may be considered by you. They should not be the subject of any discussion among you, and that you should decide this case only from the evidence which has been presented to you here in open court, under oath from the witness stand."

Actually, the article is factual, truthful and comparatively innocuous, containing little that the jury had not already heard, although it did give a small portion of the evidence heard by the court outside the presence of the jury in determining the question of reasonable cause for the vehicle search in order to rule on admissibility of the evidence. In substance, the only portion the jury had not heard was a statement that the police acted on a "tip" from an unidentified person who had previously given them a dozen good tips on

bookmakers. Nothing in the article was inflammatory in the slightest way. The matter was not pursued further at that time and no effort was made to show that the jurors were influenced or that the case was one in which there was any public feeling or outrage. Under such circumstances, we see no reason to conclude that the jury were unable to or did not obey the instructions of the court on the subject. *(People* v. *Gomez,* 41 Cal.2d 150, 160 [10] [258 P.2d 825]; *People* v. *Carter,* 56 Cal.2d 549, 572 [17b-19-17c] [15 Cal. Rptr. 645, 364 P.2d 477]; 31 A.L.R.2d 422, pt. III; 39 Am. Jur. § 86, p. 100.) ▮ In *People* v. *Stokes,* 103 Cal. 193 [37 P. 207, 42 Am.St.Rep. 102] at page 198, discussing the rule requiring the successful party to show that a jury irregularity did not affect the result, our Supreme Court said:

''The rule, however, like every other rule, is to have a reasonable and not a forced application. It does not apply where there is only a bare possibility of the result having been affected. The case must be such that the court cannot determine with any reasonable certainty whether the result was effected or not.''

We find nothing in the numerous authorities cited which announces any principle of law contrary to the foregoing and independent research has revealed none. There was no misconduct of counsel and no laxity by the trial judge. In fact, the opposite is shown by the record.

### VERDICTS

Defendants argue that prejudicial influence is shown by the jury's finding Matthew guilty of only one of the charges and Linda guilty of both. This has no basis in law (see Pen. Code, § 954; *People* v. *Codina,* 30 Cal.2d 356, 360 [3] [181 P.2d 881]; *People* v. *Grimes,* 173 Cal.App.2d 248, 251 [2] [343 P.2d 146]), and as a practical matter is explained by the testimony of the handwriting expert who found all registry was in Linda's handwriting.

Judgment, order granting probation, and order denying new trial are affirmed as to each defendant.

Coughlin, J., concurred.

A petition for a rehearing was denied July 19, 1962, and appellants' petition for a hearing by the Supreme Court was denied August 15, 1962. Peters, J., was of the opinion that the petition should be granted.