126 Cal.Rptr.2d 64 (2002)
102 Cal.App.4th 922
The PEOPLE, Plaintiff and Respondent,
v.
John Paul BETTS, Defendant and Appellant.
No. E029720.
Court of Appeal, Fourth District, Division Two.
October 8, 2002.
Review Granted January 15, 2003.
*66 Jeffrey J. Stuetz, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Senior Assistant Attorney General, Robert M. Foster and Garrett Beaumont, Supervising Deputy Attorneys General, and Warren P. Robinson, Deputy Attorney General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

*65 OPINION
RAMIREZ, P.J.
A jury convicted defendant of four counts of committing a lewd act upon the body of a child under the age of 14 years involving victim Nichole. (Pen.Code, § 288, subd. (a)).[1] The jury also convicted defendant of one count of committing a lewd act by use of force or menace (§ 288, subd. (b)(1)), one count of attempted commission of a lewd act without use of force (§§ 664 & 288, subd. (a)), and one count of committing a lewd act without use of force (§ 288, subd. (a)), involving victim Breanna. After defendant waived his right to a jury trial on a section 667.61 multiple victim allegation, the court found this allegation true. The court then reduced the forcible lewd act conviction to a lesser violation of section 288, subdivision (a).
The court sentenced defendant to 15 years to life for count 1, to be served consecutively to a determinate sentence of six years for count 2. Sentences for the other counts were ordered to be served concurrently.
Defendant contends that the trial court erred in the following respects: (1) failing to provide defendant with advisory counsel when he requested to represent himself; (2) failing to instruct the jury regarding jurisdiction; (3) instructing the jury with CALJIC No. 2.50.01; (4) admitting evidence of defendant's prior molestation offenses; and (5) imposing the section 667.61 punishment. Defendant also contends that there is insufficient evidence to support the convictions and venue was improper on two counts.
We find no prejudicial error. Accordingly, we affirm.

FACTS AND PROCEDURAL HISTORY
In June 1999, defendant married Linda. Linda and defendant were both long-haul truck drivers. When they were not on the road, defendant and Linda often stayed in Hemet, sometimes staying at the home of Linda's daughter, Shellie. Shellie had four daughters: Nichole, Breanna, Christina and Tammy. Shortly after their marriage, defendant invited Nichole to accompany him and Linda on a trucking trip to North Carolina. Nichole was 11 years old at the time. The truck had a sleeping area with two bunk beds. Defendant drove during the day and Linda drove at night.
*67 While Linda was driving the truck at night in New Mexico, defendant got into the bottom bunk where Nichole was sleeping. Defendant put his fingers underneath Nichole's shorts and began to move them up her leg. After Nichole moved, defendant removed his hand. Nichole attempted to get away from defendant by moving closer to the wall, but he moved closer to her. Nichole then reached behind her and felt a damp spot which was warm and sticky. Nichole also felt defendant's erect penis. Then Nichole left the bed and joined Linda in the driver's area of the truck.
Linda observed Nichole rubbing her hand on her leg and on the seat and appearing very upset. When Linda asked Nichole if something was wrong, she said she did not like sleeping with defendant. Linda asked Nichole if defendant had touched her. Nichole responded she did not like being touched by defendant. She later described an inappropriate touching. As a result, Linda pulled the top bunk down so Nichole could sleep there. Defendant protested that it was illegal for Nichole to sleep in the top bunk while the truck was moving.
Although defendant did not touch Nichole again during the trip while she was sleeping, he did press against her after which she felt a wet, warm, sticky spot near her on approximately five occasions. Nichole also felt defendant's penis behind her while she was sleeping approximately three times on this trip. It is unknown where these incidents happened, although they apparently occurred somewhere between New Mexico and North Carolina, not in California.
When Linda and defendant returned to Hemet after their trip to North Carolina, they left on another trip to Oregon the same day. This time both Nichole and Breanna accompanied them. This was
Breanna's idea. Breanna was nine years old at the time. Somewhere on their way to Oregon, Breanna was left sleeping in the bottom bunk bed while Linda and Nichole left the truck at a rest stop. Defendant then entered the sleeping area, took off his pants, leaving his boxer shorts on, and lay down on the bed with Breanna. Breanna woke up and told defendant she had to go to the bathroom. Defendant told Breanna he would hurt her if she was not quiet, and he put his leg over her. When Breanna attempted to escape, the defendant tried to grab her leg, which caused Breanna to jump off the bed and fall. Breanna does not know if this incident occurred in California or Oregon. Defendant did not touch Nichole on this trip.
When they arrived in Oregon, Nichole stayed with Shellie's sister in Bend, Oregon, for two more weeks, and she came back on an airplane because she did not want to get back into the truck with defendant. On the trip back from Oregon, Breanna was sick with bronchitis. Breanna eventually called Shellie from the Frazier Park area in California, and Shellie picked her up.
On October 31, 1999, defendant took Breanna and Christina on an overnight trucking trip to Los Angeles without Linda. Breanna went on the trip because she wanted to protect her younger sister. When she was in bed, Breanna heard defendant tell Christina to go to the sleeping area and take Breanna's pants off. When Christina tried to do so, Breanna hit her. Later that evening, defendant succeeded in getting Breanna's pants halfway to her knees, but Breanna pulled them back up and told defendant she did not want him touching her. Later on, when Breanna was in the bunk bed, defendant put his hand down her pants between her underwear and her sweat pants. Breanna removed *68 defendant's hand and went up front with Christina. At the end of this trip, defendant gave Breanna $5 and told her not to tell anyone what had happened.
Sometime around Christmas, Breanna told a counselor whom she had been seeing that defendant had molested her. After this, Nichole was questioned and revealed that defendant molested her also. After the girls reported the allegations, defendant had a telephone conversation with Linda in which he stated, "How much money do you want to keep quiet about the kids? You know I didn't do it anyway, but how much?" The disclosures by Breanna and Nichole tore the family apart.
On December 23, 1999, an officer with the Hemet Police Department interviewed Nichole and Breanna about the incidents. On January 14, 2000, a case worker with the Riverside County Child Protective Services interviewed both girls and her reports were consistent with the prior police interview. Later in January, Nichole recanted her accusations against defendant because of pressure from Linda and family members.
Nichole was reinterviewed by a police detective on January 25, 2000. She reaffirmed her original accusation that defendant rubbed her leg and put his hands inside her shorts. However, she recanted all the rest of her allegations. During Breanna's second interview with the detective, she also recanted one of her allegations against defendant, but reaffirmed the others.
The day before the start of trial, Nichole confessed to her mother that all of her molestation allegations were true. She stated that her prior recantation was a lie because she felt her allegations were responsible for breaking the family up and she wanted her family back together. Both girls testified at trial consistently with their initial reports.
At a hearing on September 29, 2000, defendant informed the court that he was dissatisfied with his representation by the deputy public defender and wished to represent himself with advisory counsel. After a hearing on the matter, the court denied defendant's request for advisory counsel, but granted his request that the deputy public defender be replaced by new counsel.
At trial, the prosecution offered evidence of prior sex crimes defendant had committed. Witness Kendra K. testified that in 1982 to 1983, when she was nine years old, defendant inappropriately touched her in the area of her vagina and her breasts. At the time, defendant was Kendra's mother's boyfriend and resided with her. Witness Brandy T. testified that when she was nine years old, defendant took her to his bedroom on two occasions when she spent the night at Kendra's home. Defendant had Brandy take off her clothes and he touched her in her genital area. A deputy, who had investigated these prior incidents, also testified that defendant admitted he had "accidental" sexual contact with both victims.

DISCUSSION

1. Subject Matter Jurisdiction

Defendant contends that the trial court lacked jurisdiction to prosecute him for all the molestation counts involving Nichole and one molestation count involving Breanna, which occurred outside the State of California. Defendant also asserts he was erroneously denied a jury determination of jurisdiction. We disagree.
It is presumed that a court has acted within its jurisdiction, and therefore it is defendant's burden to overcome such a presumption. (Evid.Code, § 666; Branson v. Martin (1997) 56 Cal.App.4th 300, *69 306, 65 Cal.Rptr.2d 401.) The jurisdictional power of a court to act is comprised of territorial and subject matter jurisdiction. (People v. Gbadebo-Soda (1995) 38 Cal. App.4th 160, 169-170, 45 Cal.Rptr.2d 40.) Territorial jurisdiction, or venue, refers to the county within the state in which the offense or part of the offense occurred. (Ibid.) Criminal subject matter jurisdiction has two elements. First, the crime must be punishable under a valid law of the State of California, which entails, among other requirements, that the crime must not be one over which federal courts have exclusive jurisdiction. Second, the crime must be considered to have been committed within this state. (See Pen.Code, § 777; People v. Remington (1990) 217 Cal.App.3d 423, 428-429, 266 Cal.Rptr. 183; 4 Witkin & Epstein, Cal.Criminal Law (3d ed. 2000) Jurisdiction and Venue, §§ 19-21, pp. 108-111.) It is this second element with which we are concerned in this case.[2] It has long been held that a court has jurisdiction to decide its own jurisdiction. (Rescue Army v. Municipal Court (1946) 28 Cal.2d 460, 464, 171 P.2d 8.)
The scope of California's jurisdiction is expressed in sections 27 and 778a of the Penal Code. Section 27, enacted in 1872, establishes California jurisdiction for all persons who commit any crime in this state in whole or in part. In construing section 27, it has long been held that where some act is committed in California that is an ingredient of the crime, a conviction may be sustained in this state, even though the final consummation of the offense takes place outside the state. (People v. Chapman (1921) 55 Cal.App. 192, 197, 203 P. 126; People v. MacDonald (1938) 24 Cal.App.2d 702, 709, 76 P.2d 121; see also People v. Harden (1936) 14 Cal. App.2d 489, 492, 58 P.2d 675 [when money actually transferred in Mexico, the acts leading up to taking money performed in California established California's jurisdiction for theft offense].)
Section 778a, subdivision (a), enacted in 1905, provides that: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state." In interpreting this section, our Supreme Court has held that California's jurisdiction to prosecute a crime completed elsewhere is not dependent on the commission in this state of an attempt to commit the offense. Jurisdiction exists, rather, when the defendant in this state engages in non de minimis preparatory acts with the intent of aiding the completion of a crime. (People v. Morante (1999) 20 Cal.4th 403, 436, 84 Cal.Rptr.2d 665, 975 P.2d 1071 (Morante).)[3] For example, in *70 People v. Brown (2001) 91 Cal.App.4th 256, 109 Cal.Rptr.2d 879, the defendant, who was not a licensed physician, made preparations in California to amputate the victim's leg, including meeting the victim here. However, the amputation was actually performed in Mexico. The victim returned to California for postoperative treatment, and shortly thereafter died from gas gangrene as a result of the surgery. The court held that the defendant's actions in California constituted non de minimis preparations such that California had jurisdiction to prosecute the defendant for murder. (Id. at pp. 266-267, 109 Cal. Rptr.2d 879.)
Our research reveals no California authority on whether the judge or the jury should determine contested jurisdictional facts. Defendant fails to cite any authority for his assertion that a jury determination of this issue is required. None of the cases defendant cites, People v. Chapman, supra, 55 Cal.App. 192, 203 P. 126, People v. Botkin (1908) 9 Cal.App. 244, 98 P. 861, or People v. MacDonald, supra, 24 Cal. App.2d 702, 76 P.2d 121, hold that subject matter jurisdiction is an issue only the jury can decide. While the court in People v. Cavanaugh (1955) 44 Cal.2d 252, 282 P.2d 53 submitted the subject matter jurisdiction issue to the jury, the Supreme Court did not address whether this was appropriate. In People v. Chapman (1977) 72 Cal.App.3d 6, 139 Cal.Rptr. 808, the trial court initially instructed the jury on the elements of section 778a. However, when the jury asked a question about the defendant's intent, the court improperly told it that the defendant could be found guilty even though his intent to commit the offense had not been formed in California. The court's response effectively removed a requisite element of section 778a from consideration, which was held to be prejudicial error. (People v. Chapman, supra, 72 Cal. App.3d at p. 6, 139 Cal.Rptr. 808.) This case, however, never directly addressed whether the jurisdictional facts pursuant to section 778a should be determined by the judge or the jury in the first instance. Thus, in the absence of previous decisions in California on this issue, we look to other authority for guidance to determine the rule for resolving subject matter jurisdictional facts in criminal cases.
There is a pronounced split of authority as to whether a state's jurisdiction is a question for the court or for the jury. Most states have held that if the facts on which jurisdiction depends are controverted, resolution of those disputed facts must be left to the jury. (See State v. Willoughby (1995) 181 Ariz. 530, 892 P.2d 1319, 1325; People v. Cullen (Colo.Ct.App.1984) 695 P.2d 750, 751; Sheeran v. State (Del. 1987) 526 A.2d 886, 890; Lane v. State (Fla.1980) 388 So.2d 1022, 1028; McKinney v. State (Ind.Ct.App.1990) 553 N.E.2d 860, 863-864; State v. Liggins (Iowa 1994) 524 N.W.2d 181, 184-185; State v. Collin (Me.1997) 687 A.2d 962, 964; State v. Butler (1999) 353 Md. 67, 724 A.2d 657, 663; People v. McLaughlin (1992) 80 N.Y.2d 466, 591 N.Y.S.2d 966, 606 N.E.2d 1357, 1359-1360; State v. Batdorf (1977) 293 N.C. 486, 238 S.E.2d 497, 502-503; Commonwealth v. Bighum (1973) 452 Pa. 554, 307 A.2d 255, 258, receded from on other grounds in Commonwealth v. Randall (1987) 515 Pa. 410, 528 A.2d 1326; State v. Beall (Tenn.Crim.App.1986) 729 S.W.2d 270, 271.)
A minority of jurisdictions have held that the issue is not for the jury but for the court. (State v. Beverly (1993) 224 Conn. 372, 618 A.2d 1335, 1338 (Beverly); Mitchell v. U.S. (D.C.Ct.App.1990) 569 A.2d 177, 180, cert, den., 498 U.S. 986 [111 S.Ct. 521, 112 L.Ed.2d 532]; Adair v. United States (D.C.Ct.App.1978) 391 A.2d 288, 290; State v. Reldan (App.Div.1982) 185 N.J.Super. 494, 449 A.2d 1317; but see *71 State v. Bragg (App.Div.1996) 295 N.J.Super. 459, 685 A.2d 488, 491-492; State v. Belloli (R.I.2001) 766 A.2d 928, 932; State v. Halstead (R.I.1980) 414 A.2d 1138, 1144.)
A review of the cases following the majority rule indicates there are two fundamental rationales for submitting disputed jurisdictional facts to the jury. In these states, subject matter jurisdiction is considered an element of the crime (Sheeran v. State, supra, 526 A.2d at p. 890; State v. Liggins, supra, 524 N.W.2d at p. 184; McKinney v. State, supra, 553 N.E.2d at p. 863), or subject matter jurisdiction is required to be proven beyond a reasonable doubt (State v. Willoughby, supra, 892 P.2d at p. 1327; Lane v. State, supra, 388 So.2d at p. 1029; State v. Collin, supra, 687 A.2d at p. 964; State v. Baldwin (Me. 1973) 305 A.2d 555, 561; State v. Butler, supra, 724 A.2d at p. 665; People v. McLaughlin, supra, 591 N.Y.S.2d 966, 606 N.E.2d at p. 1358; State v. Batdorf, supra, 238 S.E.2d at pp. 502-503; State v. Beall, supra,
 729 S.W.2d at p. 271). In states where subject matter jurisdiction is considered an element of the crime itself, a jury must determine jurisdictional facts since the defendant's constitutional right to a jury trial is implicated. The states requiring a heightened standard of proof for subject matter jurisdiction do so because they reason that this issue involves a vital fundamental right. (See People v. McLaughlin, supra, 591 N.Y.S.2d 966, 606 N.E.2d at p. 1359.) Subject matter jurisdiction relates to the very authority of the tribunal because, without it, the case cannot proceed and the judgment cannot be enforced. Thus, they reason that employing the highest standard of proof on this issue insures that when a court acts, it does so with authority. (See State v. Butler, supra, 12A A.2d at p. 664; State v. Baldwin, supra, 305 A.2d at p. 559; State v. Batdorf, supra, at p. 502.) The courts in these cases, however, seem to conclude without analysis that disputed jurisdictional facts must be submitted to a jury merely because the burden of proof is elevated.
Unlike these states, subject matter jurisdiction is required to be proven only by a preponderance of the evidence in California, not beyond reasonable doubt. (People v. Cavanaugh,[4]supra, 44 Cal.2d at p. 262, *72 282 P.2d 53 [whether murder occurred in San Diego County or Mexico]; People v. Barthel (1962) 204 Cal.App.2d 776, 779, 22 Cal.Rptr. 599 [whether bookmaking occurred in San Diego County or over Mexican border].) California's lower burden of proof therefore distinguishes it from the states following the majority rule and implies that a jury trial on this issue may not be required. California criminal statutes do not define subject matter jurisdiction as an element of a crime. We have found no authority holding that subject matter jurisdiction is an element of a crime. (See People v. Sering (1991) 232 Cal.App.3d 677, 688, 283 Cal.Rptr. 507 (Sering) [location of the crime is not an essential element of a charged offense in case where venue challenged].) Indeed, our Supreme Court has noted that the location of the crime is a type of procedural legal issue analogous to other procedural issues unrelated to the guilt or innocence of the accused that should be determined by the court and resolved prior to trial. (Simon, supra, 25 Cal.4th at p. 1110, fn. 18, 108 Cal.Rptr.2d 385, 25 P.3d 598.) We therefore find the reasoning for the majority rule inapplicable and unpersuasive here.
Instead, we find Beverly, supra, 224 Conn. 372, 618 A.2d 1335, instructive. In Beverly, a murder victim's decomposed body was found in Connecticut. The victim, who was a resident of Massachusetts, had last been seen alive three months earlier when she was barhopping with the defendant and traveling in his automobile in Massachusetts. The defendant claimed Connecticut lacked jurisdiction to adjudicate a murder charge against him, and that the jury, not the trial court, should have decided the jurisdictional facts to prove the victim was murdered in Connecticut. The Beverly court reasoned that courts have inherent authority to determine their own jurisdiction and the Sixth Amendment entitles an accused to a jury of his peers only on factual issues central to the statutory elements of an offense. (Id. at p. 1338.) The elements of a crime are spelled out in the statute defining the crime, and the Connecticut murder statute did not state that the physical location of the murder is part of the offense. The court reasoned that since the defendant's right to a jury trial does not extend beyond the factual issues of ultimate guilt or innocence under the relevant statute, the trial court properly determined whether Connecticut had jurisdiction over the offense. The Beverly court also astutely recognized the practical difficulties in having a jury determine jurisdiction, namely that a "defendant would be put through the expense, anxiety and uncertainty of a trial to resolve an issue of jurisdiction that could be resolved in a pretrial hearing." (Id. at p. 1339.)
We agree with Beverly's reasoning that a defendant's right to a jury trial does not extend beyond the factual issues of ultimate guilt or innocence under the relevant statute. Subject matter jurisdiction simply does not concern the factual guilt or innocence of the accused. Rather, it concerns the authority of the state to proceed with the case. We believe there is a distinction between facts which establish criminality and those which merely satisfy procedural requirements. Thus, jurisdictional defects are analogous to other defects which do not relate to the factual guilt or innocence of the accused and which are properly resolved by the trial court. (See People v. McGee (1977) 19 Cal.3d 948, 967-968, 140 Cal.Rptr. 657, 568 P.2d 382, superseded by statute on other grounds as stated in People v. Preston (1996) 43 Cal.App.4th 450, 50 Cal.Rptr.2d 778 [whether state had sought the requisite restitution prior to instituting criminal welfare fraud prosecution properly resolved by the court prior to trial]; Murgia *73 v. Municipal Court (1975) 15 Cal.3d 286, 293, fn. 4, 124 Cal.Rptr. 204, 540 P.2d 44, superseded by statute on other grounds as stated in People v. Superior Court (Baez) (2000) 79 Cal.App.4th 1177, 94 Cal.Rptr.2d 706 [defense of discriminatory prosecution based upon union affiliation is constitutional defect in institution of prosecution properly resolved by court prior to trial].) While subject matter jurisdiction is a fundamental, nonwaivable right (People v. Williams (1999) 21 Cal.4th 335, 340, 87 Cal.Rptr.2d 412, 981 P.2d 42), that does not necessarily mean that a defendant is entitled to a jury determination of the issue. Because jurisdiction is not one of the facts essential to establishing the criminality of a defendant's conduct, we find that such a determination is not compelled. Most importantly, in light of the long-standing rule that a court has jurisdiction to decide its own jurisdiction (Rescue Army v. Municipal Court, supra, 28 Cal.2d at p. 464, 171 P.2d 8), we find it anomalous to allow a jury to tell the court whether it has jurisdiction or not. We therefore agree with the minority view and conclude that resolution of jurisdictional facts falls within the province of the court, not the jury.
Several practical and procedural considerations also support the minority rule. First, a challenge to a court's fundamental subject matter jurisdiction strikes at the very foundation of the court's authority and therefore should be determined pretrial by the court as a matter of law. Treating subject matter jurisdiction as a threshold matter that should be challenged prior to trial affords substantial procedural safeguards for the defendant and serves the interests of judicial efficiency and economy. If only a jury could determine subject matter jurisdiction, a defendant would always be put through the expense, anxiety, and uncertainty of a trial and the only mechanism to challenge jurisdiction would be an appeal after the conclusion of trial. If this issue is resolved by the court, a defendant can challenge subject matter jurisdiction in a pretrial hearing and obtain immediate review via a writ proceeding. Moreover, requiring a jury to decide subject matter jurisdiction under the preponderance of evidence standard while simultaneously deciding guilt for the offense under a reasonable doubt standard will, no doubt, lead to jury confusion. Resolution of this issue by the court, pretrial, avoids this potential confusion.
The fact that subject matter jurisdiction under section 778a involves an analysis of the facts does not alter our conclusion. In this case, all the offenses involving Nichole and one offense involving Breanna indisputably occurred outside California and only acts of preparation allegedly took place in California. To convict defendant for molestation in California, the People had to prove that he had the intent to commit the offense, coupled with an act, while he remained in California. Courts routinely consider contested facts when deciding legal issues in pretrial matters, even when the issues concern a defendant's constitutional rights, such as whether physical evidence or a defendant's statement were legally obtained. We see no reason why subject matter jurisdiction should be handled differently.
Additionally, unlike in State v. Willoughby, supra, 181 Ariz. 530, 892 P.2d 1319, a case representing the majority view, the jurisdictional facts are not the same as the substantive facts here. Arizona law, unlike California, requires that an element of the charged offense be committed within the state for it to assert jurisdiction. (A.R.S. § 13-108(A)(1).) In Willoughby, the defendant's premeditation in Arizona was necessary to establish its jurisdiction to prosecute him for first degree murder where the victim had been killed in Mexico. *74 Premeditation is also a substantive element of the crime of first degree murder in Arizona. California, in contrast, does not require that an element of the offense occur in the state in order to assert jurisdiction, only that a non de minimis act occur with intent to commit the offense. (Morante, supra, 20 Cal.4th at p. 436, 84 Cal.Rptr.2d 665, 975 P.2d 1071.) The jurisdictional facts here (intent to commit the offense and any act in furtherance of it) are different from the substantive elements of the crime (lewd or lascivious act upon the body of a child under 14 years old). It therefore follows that a jury determination is not mandated.
For the foregoing reasons we conclude that subject matter jurisdiction is a matter for the court to determine when the jurisdictional facts are controverted. Thus, it was appropriate for the trial court, at the outset, to determine jurisdiction here pretrial.
The preponderance of the evidence shows that non de minimis preparatory acts to commit the molestations were done in California in this case. The truck trips themselves facilitated defendant's crimes because they placed the victims in close sleeping quarters with him, isolated the victims from their mother, and prevented the grandmother's supervision since she always drove at night. Indeed, defendant knew the victims would have to sleep in the lower bunk with him because it was illegal for anyone to be in the upper bunk while the truck was moving. Thus, the crimes here were made possible by defendant inviting the two victims on truck trips which commenced in California.
Defendant's intent to molest the victims can be inferred from his predisposition to molest young girls when they slept near him. Defendant had previously molested Brandy when she was on a sleepover in his residence, and he had also molested his girlfriend's daughter when she slept in his house. Defendant's intent to molest is also evidenced by his endeavors to lay the groundwork for the molestations by selecting the victims and getting them into a vulnerable position. He gave the victims gifts and showed them affection in California prior to the trips in order to gain their confidence and their family's trust. Defendant's intent while in California to molest Breanna during the Oregon trip is even more evident because he had molested Nichole just days before on the North Carolina trip under identical circumstances. Hence, the facts here fit squarely within the purview of section 778a. Therefore, we find no error in the court's determination that California had jurisdiction over the molestation offenses here.
Defendant correctly notes that the decision in Morante, supra, 20 Cal.4th 403, 84 Cal.Rptr.2d 665, 975 P.2d 1071, was not final until July 21, 1999, which is after the trips to North Carolina and Oregon had occurred. (Cal. Rules of Court, rule 24(a).) He argues that since Morante did not exist at the time he committed the out-of-state crimes and cannot be applied retroactively, the Buffum[5] attempt rule applies. In Buffum, supra, 40 Cal.2d at pp. 715-717, 256 P.2d 317, the California Supreme Court held that California lacks jurisdiction to prosecute for conspiracy where the object crime of the conspiracy was committed outside the state. Defendant asserts that his conduct in California did not amount to an attempt to molest either victim. However, our Supreme Court noted in Morante that the Buffum attempt rule had never been announced nor consistently applied by it to any crime or theory of liability except conspiracy. (Morante, supra, 20 Cal.4th at p. 438, 84 Cal.Rptr.2d *75 665, 975 P.2d 1071.) In Morante, the court held that the Buffum attempt rule did not apply to the defendant's drug offense convictions. (Morante, supra, at pp. 437-438, 84 Cal.Rptr.2d 665, 975 P.2d 1071.) The court had earlier declined to extend the rule to another non-conspiracy crime. (People v. Burt (1955) 45 Cal.2d 311, 313-315, 288 P.2d 503.) Thus, prior to Morante, the Buffum attempt rule had only been applied to charges of conspiracy. (People v. Brown, supra, 91 Cal.App.4th at pp. 264-265, 267, 109 Cal.Rptr.2d 879.) We accordingly reject defendant's assertion that the Buffum attempt rule applies to his molestation charges here.
We also reject defendant's Sixth Amendment challenge. The Sixth Amendment provides that the accused shall have a trial by an impartial jury in the state where the crime is committed. California has jurisdiction where preparatory action taken here, coupled with the requisite intent, constitutes more than de minimis acts toward completion of the offense. (Morante, supra, 20 Cal.4th at p. 436, 84 Cal.Rptr.2d 665, 975 P.2d 1071.) We find nothing in the Sixth Amendment that prevents California from punishing an offense when part of the crime is in fact committed within this state. (See People v. Botkin, supra, 9 Cal.App. at p. 251, 98 P. 861; see also Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, 108 Cal.Rptr.2d 409, 25 P.3d 618 [vicinage clause of Sixth Amendment not applicable in a state criminal trial].)
We therefore conclude that defendant has not met his burden to overcome the presumption of proper subject matter jurisdiction.

2. Venue

Defendant contends that Riverside County was an improper venue for trying him on two of the molestation counts which allegedly occurred in Los Angeles County. Defendant also contends that the jury should have been instructed on the issue of venue. Again, we disagree.
We first address defendant's contention that the trial court erred in failing to allow the jury to determine venue. Unlike subject matter jurisdiction, territorial jurisdiction is a nonfundamental aspect of jurisdiction which may be waived. (Simon, supra, 25 Cal.4th at p. 1109, 108 Cal.Rptr.2d 385, 25 P.3d 598; Sering, supra, 232 Cal.App.3d at pp. 684-685, 283 Cal.Rptr. 507; People v. Campbell (1991) 230 Cal.App.3d 1432, 1443, 281 Cal.Rptr. 870.) Failure to timely tender a proposed instruction waives a defendant's right to have the question of venue submitted to the jury. (Simon, supra, 25 Cal.4th at pp. 1109-1110, 108 Cal.Rptr.2d 385, 25 P.3d 598.) Defendant's failure to request a venue instruction waived his right to a jury determination of the matter. (Ibid.)
While resolution of this case does not require us to directly confront the rule that venue is a jury question, we nevertheless address it because it is an important issue. We recognize the lengthy and uniform line of cases which hold that venue is a question of fact to be determined by the jury. (People v. More (1886) 68 Cal. 500, 504, 9 P. 461; People v. Jackson (1983) 198 Cal.Rptr. 135, 150 Cal.App.3d Supp. 1, 16; People v. Witt (1975) 53 Cal.App.3d 154, 167, 125 Cal.Rptr. 653; People v. Jones (1964) 228 Cal.App.2d 74, 86-87, 39 Cal. Rptr. 302.) However, recent decisions have criticized this rule, stating it is outmoded and should be reconsidered. Recent cases strongly opine that pretrial resolution of a venue question is eminently superior to disposition of the issue by jury verdict. (See Simon, supra, 25 Cal.4th at pp. 1100-1109, 108 Cal.Rptr.2d 385, 25 P.3d 598; Sering, supra, 232 Cal.App.3d at p. 684, fn. 3, 283 Cal.Rptr. 507.) We agree.
*76 To begin with, it is well settled that venue is not an essential element of a charged offense. (Id. at p. 688, 283 Cal. Rptr. 507; People v. Remington, supra, 217 Cal.App.3d at p. 430, 266 Cal.Rptr. 183.) Therefore, for the same reasons enumerated in the subject matter jurisdiction section above, we do not find that a jury determination of venue is constitutionally compelled.
Additionally, as explained in Simon, the principal purpose of venue provisions, from the defendant's perspective, is to safeguard the defendant from being required to stand trial in an unrelated and potentially burdensome location. (Simon, supra, 25 Cal.4th at p. 1110, fn. 18, 108 Cal.Rptr.2d 385, 25 P.3d 598.) This protection can be meaningfully ensured to a defendant only if the venue question can be determined before the trial proceeds. If a venue challenge is determined and sustained by the court, the trial can then be conducted in the proper location, before the defendant, the witnesses, and the court have incurred the burden and expense of a trial in an improper venue. If venue is a jury question, a defendant is powerless to challenge it until after the trial in the improper venue is completed.
Moreover, double jeopardy does not bar reprosecution of a defendant in the proper venue when a conviction is overturned for lack of venue. (See Sering, supra, 232 Cal.App.3d at pp. 689-691, 283 Cal.Rptr. 507 [insufficient proof of venue does not mandate acquittal of substantive charge]; People v. Garcia (1953) 266 P.2d 233, 122 Cal.App.2d Supp. 962 [conviction reversed for lack of venue and remanded for new trial]; see also U.S. v. Douglas (N.D.Cal.1998) 996 F.Supp. 969, 975 [double jeopardy does not bar reprosecution where charges are dismissed for lack of venue because venue does not go to guilt or innocence; the double jeopardy clause does not preclude a second prosecution where proceedings against a defendant are terminated on a basis unrelated to factual guilt or innocence].) The result of requiring a jury finding on venue is that a defendant could conceivably be subjected to multiple trials for the same crime.
Finally, since venue need only be proven by a preponderance of the evidence (Sering, supra, 232 Cal.App.3d at p. 688, 283 Cal.Rptr. 507), requiring a jury to decide venue creates the identical jury confusion problem that we discussed previously regarding subject matter jurisdiction.
For the foregoing reasons, we believe pretrial resolution of a venue question by the court is both proper and superior to disposition of the issue by jury verdict. Even if we were to conclude otherwise, defendant's failure to request instructions permitting the jury to determine venue would prevent us from overturning his conviction on this basis. (See Sering, supra, 232 Cal.App.3d at p. 684, fn. 3, 283 Cal.Rptr. 507.)
Venue here is governed by sections 783 and 781. Section 783 provides that when a public offense is committed in this state in a motor vehicle during the course of a trip, jurisdiction vests in the area, among others, where the trip terminates. Additionally, section 781 provides that when an offense is committed partly in one jurisdiction and partly in another, or the acts requisite to the consummation of the offense occur in two or more jurisdictional areas, jurisdiction to try the offense lies in either area. Pursuant to this section, venue can be fixed where prehminary arrangements have been committed which are requisite to the achievement of an offense, even if the acts are not essential elements of the offense charged. (People v. Douglas (1990) 50 Cal.3d 468, 493, 268 Cal.Rptr. 126, 788 P.2d 640, abrogated on *77 other grounds in People v. Marshall (1990) 50 Cal.3d 907, 269 Cal.Rptr. 269, 790 P.2d 676; People v. Campbell, supra, 230 Cal. App.3d at p. 1444, 281 Cal.Rptr. 870; People v. Tolbert (1986) 176 Cal.App.3d 685, 691, 222 Cal.Rptr. 313.) "[S]ection 781 must be given a liberal interpretation to permit trial in a county where only preparatory acts have occurred." (Simon, supra, 25 Cal.4th at p. 1109, 108 Cal.Rptr.2d 385, 25 P.3d 598.) For example, in People v. Malloy (1962) 199 Cal.App.2d 219, 225-226, 18 Cal.Rptr. 545, preliminary arrangements included the defendant gathering up children for a visit to his cabin in another county and initiating the transportation of them to his cabin, where he molested them. (See also People v. Ortez (1953) 120 Cal.App.2d 469, 472, 261 P.2d 325 [when a defendant invited the victim into his car in one county, jurisdiction vested in that county even though the act of rape occurred in another county].)
Here, it is undisputed that defendant committed two offenses against Breanna in the truck during the trip from Riverside County to Los Angeles County and back. Since this trip terminated in Riverside County, it was a proper venue pursuant to section 783. Additionally, Riverside County is where defendant invited Breanna into his truck and instigated the trip to Los Angeles so that he could have access to her outside the presence of her mother and grandmother. Thus, the requisite preliminary arrangements for the molestation occurred in Riverside County. The record therefore demonstrates sufficient facts to apply both sections 781 and 783, vesting venue in Riverside County. Thus, the trial court's determination of venue was correct here.
Defendant's reliance on People v. Bradford (1976) 17 Cal.3d 8, 130 Cal.Rptr. 129, 549 P.2d 1225 is misplaced. In Bradford, section 783 was held inapplicable because the vehicle was stopped and the offenses were committed outside the vehicle at an identifiable spot along the highway. Unlike Bradford, the location of the molestations is not readily identifiable here. Breanna could not identify exactly where she was molested. She only knew that it was somewhere inside the truck on the trip between Hemet and Los Angeles.
We therefore conclude that Riverside County was a proper venue for the two molestations involving Breanna on the Los Angeles trip, even though their locations were not readily identifiable.
3-7. [**]

DISPOSITION
The judgment is affirmed.
We concur: McKINSTER and GAUT, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3., 4., 5., 6., and 7.
[1] All further statutory references are to the Penal Code unless otherwise specified.
[2] California courts' use of the terms "jurisdiction," "subject matter jurisdiction," and "territorial jurisdiction" has been inconsistent and notoriously subject to confusion. (See People v. Simon (2001) 25 Cal.4th 1082, 1096, fn. 7, 108 Cal.Rptr.2d 385, 25 P.3d 598 (Simon ).) Adding to the confusion is the fact that other states use the term "territorial jurisdiction" to describe what California refers to as subject matter jurisdiction. For purposes of this opinion, we use the terms "subject matter jurisdiction" or "state jurisdiction" for the concept of whether the offense was committed within the geographic boundaries of the state such that a criminal offense may be tried in the state.
[3] In Morante, the Supreme Court overturned its prior decision in People v. Buffum (1953) 40 Cal.2d 709, 715-718, 256 P.2d 317 (Buffum ), in which it held that no jurisdiction in California existed to prosecute a charge of conspiracy unless acts in this state amount to an attempt to commit the underlying offense.
[4] Betts contends that Cavanaugh was overruled by Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi) and Ring v. Arizona (2002) 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (Ring). We disagree. Apprendi held that the true findings necessary to a hate-crime enhancement must be submitted to a jury and proven beyond a reasonable doubt. (Apprendi, supra, 530 U.S. at p. 476, 120 S.Ct. 2348.) The Supreme Court declared that the circumstances of a crime and the intent of the perpetrator, the factors addressed by the enhancement, are essential elements of the offense. (Id. at p. 480, 120 S.Ct. 2348.) The Supreme Court added, "[C]riminal law `is concerned ... with the degree of criminal culpability.' (Id. at p. 485, 120 S.Ct. 2348.) Later, in Ring, the Supreme Court said of its holding in Apprendi, "If a State makes an increase in a defendant's ... punishment contingent on the finding of a fact, that factno matter how the State labels itmust be found by a jury beyond a reasonable doubt." (Ring, supra, 536 U.S. at p. 601, 122 S.Ct. at p. 2439.)

Not surprisingly, Ring held that the existence of aggravating factors justifying the imposition of the death penalty must be made by the jury. The Court noted that a jury trial is required "o[n] any fact on which the legislature conditions an increase in . . . maximum punishment." (Ring, supra, 536 U.S. at p. 587, 122 S.Ct. at p. 2432.) Echoing the sentiments expressed in Apprendi, Ring commented that no matter what you call it, if a factor is an essential element of an offense, it must be proven to a jury beyond a reasonable doubt. (Id. at p. 2441.)
Neither of these cases addresses subject matter jurisdiction. Neither can they be read as inferring that such is an essential element of a crime, subject to the requirements of proof beyond a reasonable doubt and a jury determination.
[5] People v. Buffum (1953) 40 Cal.2d 709, 256 P.2d 317 (Buffum).
[**] See footnote *, ante.